UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-60907-CIV-MORENO/SELTZER

FEDERAL TRADE COMMISSION, et al.,

    Plaintiffs,

v.

JEREMY LEE MARCUS, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court on Amanda Finley's Expedited Motion for Imposition of Equitable Lien on Real Property Located at 300 Royal Plaza Drive, Fort Lauderdale, Florida 33301 ("Motion") (DE 404). This matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the Southern District of Florida (DE 407). The undersigned has carefully considered the motion and the record, and is otherwise fully advised. For the reasons stated below, it is **RECOMMENDED** that Finley's Motion (DE 404) be **GRANTED**.

**I.    BACKGROUND**

This dispute invokes the Court's equitable authority to distribute assets in a receivership, namely, the proceeds of a home sale. The receivership was created to benefit victims of Defendants' fraudulent debt-relief scheme. (DE 6, 21). The particulars of the scheme are not relevant for present purposes, and the bulk of the underlying litigation between the plaintiffs and the individual defendants was concluded in April 2008

based on a series of stipulated orders (DE 212, 231, 232). Among other things, the stipulations provided for the turnover of certain assets belonging to Defendant Jeremy Marcus, as well as injunctive relief and damages (Id.).

At the time this litigation was initiated, non-party Claimant Amanda Finley ("Finley") was Marcus's spouse, as well as a co-owner and tenant-by-the-entirety of real property located at 300 Royal Plaza Drive, Fort Lauderdale, Florida 33301 ("Property"). It is undisputed that in exchange for Finley's cooperation in marshalling receivership assets, and to eliminate the need to join her as a defendant in the underlying lawsuit, the Receiver recognized her potential right to assert an equitable lien in the Property based on her financial contributions to its purchase price. That contribution, $107,500, was rebated by Finley from a commission she earned as the buyer's sales associate on the purchase.

Because the Property was purchased in part by Marcus based on the proceeds of the fraud, this asset, or at least a portion of it, was subject to eventual turnover. Accordingly, the Receiver wrote Finley a letter inviting Finley to quitclaim her interest in the Property by "agree[ing] that [Finley] [was] not waiving any potential right [she] may have to assert an equitable lien in the property based solely on a brokerage fee [she] claim[ed] to have earned in its purchase . . . ." (DE 415, Ex. A). Finley assented and provided the Receiver a quitclaim deed (DE 406: 7-8). At some point thereafter, however, the Receiver adopted the inconsistent position that the quitclaim deed extinguished her equitable interest. (See DE 411: 10-11).

Ultimately, the Receiver arranged a sale of the Property. At the insistence of the title insurance company, the Receiver further requested that Finley execute a special warranty deed disavowing any homestead interest in the property. In principle, Finley did

not object to executing the deed, but before doing so, sought reassurance from the Receiver that she would not be waiving her entitlement to seek an equitable lien on the sale proceeds. Unwilling to agree, the Receiver moved to compel Finley on an expedited basis to execute the special warranty deed. (DE 406). The Receiver ultimately agreed to hold $107,500 in trust pending the resolution of Finley's equitable lien claim. While maintaining that Finley was not entitled to the equitable lien, the Receiver argued that "it can be addressed on a different day." (Id.). Finley subsequently executed the special warranty deed (DE 409), and the day to resolve her equitable lien claim has now arrived.

## II.   DISCUSSION

Courts must look to applicable state law when determining whether an equitable lien should be imposed. See, e.g., In re Fin. Federated Title & Tr., Inc., 347 F.3d 880, 886 (11th Cir. 2003). In Florida, an equitable lien may be granted upon "general considerations of right or justice" as applied to the particular circumstances of a case. See Jones v. Carpenter, 106 So. 127, 129 (1925); Ross v. Gerung, 69 So.2d 650, 652 (Fla. 1954). In Palm Beach Savings & Loan Assoc., F.S.A., et al. v. Fishbein, 619 So.2d 267, 271 (Fla. 1993), the Florida Supreme Court further recognized that the imposition of an equitable lien may be appropriate, even on a homestead property, "in order to prevent unjust enrichment" and "where equity demands." Id.  Whether to impose an equitable lien in the receivership context is a matter of court discretion.   Cox Enterprises, Inc. v. Pension Ben. Guar. Corp., 666 F.3d 697, 701 (11th Cir. 2012).

Given the particular circumstances of this case, the undersigned concludes that the imposition of an equitable lien on the sale proceeds is appropriate. Several considerations compel this conclusion.

Initially, the Receiver does not dispute that Finley rebated $107,500 towards the purchase of the Property.[1] Indeed, Finley has provided the Court with a HUD-1 settlement statement confirming the rebated amount, as well as a contract identifying Finley as the sales associate entitled to a commission on the purchase transaction (DE 404, Exhs. A-B). The Receiver did not object to these exhibits. Accordingly, the undersigned will credit the exhibits, as well as Finley's statements (which are both unrefuted and presumptively credible[2]), as sufficient to establish the fact that Finley's personal funds, earned in the course of legitimate employment, were used to pay down a portion of the Property's purchase price.

The Receiver then expressly agreed, as a condition of Finley quitclaiming her interests in the Property, that Finley **did not** "waiv[e] any potential right . . . to assert an equitable lien in the property based solely on a brokerage fee [she] claim[ed] to have earned in its purchase . . . ." (DE 415, Ex. A).

But after receiving the benefit of his bargain, the Receiver is now arguing the opposite: that the very quitclaim deed he expressly induced by recognizing Finley's ability to litigate her equitable claim at a later time, in fact, extinguished her equitable claim. This is a prototypical example of a "gotcha" argument, and the undersigned is unmoved by it.

---

[1] Rather, the Receiver disputes that Finley is a "broker." (DE 411: 11). Finley, however, does not claim to be a "broker," nor does she seek the imposition of a "broker's lien," as confusingly argued by the Receiver.

[2] Finley is a member of the Bar in good standing. See Holloway v. Arkansas, 435 U.S. 475, 486 (1978) (accepting the tenet that "attorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath.") (quotations omitted).

Had the Receiver taken this position at the outset, Finley would have had her day in Court as a party to the underlying lawsuit and could have asserted her equitable claim at an earlier stage in these proceedings.

Accepting the Receiver's argument would require the undersigned to conclude that the Receiver's agreement was a mere ruse or trick. Applying the principles of equity, the undersigned declines to endorse this result and concludes that an equitable lien should be imposed in Finley's favor on the basis of her financial contributions to the purchase of the Property. See, e.g., In re Hecker, 316 B.R. 375, 390 (Bankr. S.D. Fla. 2004), aff'd, 264 Fed. Appx. 786 (11th Cir. 2008) (recognizing that an innocent spouse may be entitled to assert a claim to a portion of the proceeds prospectively to be derived from a sale of a property based on the amount of her contributions to the purchase price). [3]

The undersigned further concludes that if the Receiver were permitted to retain Finley's contribution, it would amount to an improper windfall for the Receiver because the commission Finley earned as a real estate sales associate is independent of the underlying fraud scheme that was the genesis of the receivership. The Receiver has not explained how it would be entitled to this sum. Indeed, the Eleventh Circuit has instructed that a trustee's interests over fraudulently acquired real estate can be no greater than the

---

[3] The Receiver alternatively argues that even if Finley were entitled to an equitable lien, it would be subordinate to the Receiver's equitable lien. The undersigned disagrees.

First, the Receiver did not establish an equitable lien because the Property was turned over by stipulation of the parties. See In re All Star Mortg. Fin. Corp., 411 B.R. 774, 782 (Bankr. S.D. Fla. 2009) (unperfected equitable interest is subordinate to the interest of a judicial lien creditor under Florida law) (citing In re Mabbott, 255 B.R. 787 (Bankr. M.D. Fla. 2000)). Nor was the Receiver a bona fide purchaser without notice since he expressly agreed to Finley's reservation of rights prior to the the transfer.

Second, Finley's contributions to the property are akin to a purchase-money security interest, which would take priority over the Receiver's lien, even if he had one. See generally Fla. Stat. § 679.324.

amount fraudulently obtained and used to benefit the land.  <u>In re: Fin. Federated Title & Trust, Inc.</u>, 347 F.3d 880, 892 (11th Cir. 2003). Applying that maxim here, the Receiver's equitable interest in the Property does not extend to Finley's sales commission.

Finally, the undersigned addresses the doctrine of "unclean hands." Despite his various statements appearing to conflate Finley's conduct with those of her ex-husband, the Receiver has provided no evidence to support its assertion that Finley was complicit in the fraud or that her sales commission was tainted in any way. Contrary to the Receiver's repeated assertions that the commission was "comprised entirely of stolen funds," (DE 411: 13, 14), in fact, the commission was **paid by the seller**, as it usually is. (<u>See</u> DE 404: Ex. A, ln. 703).[4]  Although the Receiver accuses Finley of enjoying an "extravagant lifestyle" and failing to "pay rent" for living in her own house, these remarks, even if true, are wholly insufficient to establish unclean hands.  <u>See generally</u> <u>Calloway</u>

---

[4] The undersigned is troubled by the Receiver's repeated accusations—and subsequent failure to produce evidence of—fraudulent misconduct by Finley. In particular, the Receiver makes the following unsupported assertions: (1) "Amanda [Finley] was a participant . . . of the debt relief scheme." (DE 411: 3); (2) "Immediately after Amanda [Finley] had notice of this Court's asset freeze, she violated the freeze . . . ." (<u>Id.</u>: 12); (3) "[Amanda Finley] utilized her real estate commission, comprised entirely of stolen consumer funds, in the acquisition of the Property . . . ." (<u>Id.</u>: 14); (4) "[Amanda Finley] and Jeremy [Marcus] ended up getting back over $158,000 in overages after closing." (<u>Id.</u>), and; (5) "The Receiver has undisputably [sic] traced the monies Defendant Jeremy [Marcus] and Amanda [Finley] used to purchase the Royal Plaza Property as coming from the Receivership Defendants . . . ." (<u>Id.</u>: 17).
    The undersigned notes that previously, the Receiver strongly implied in his First Interim Report that Finley fraudulently utilized a federal judge's judicial stamp to approve a payment to herself in an unconnected litigation. (DE 19: 37-38). That document has since been restricted and amended after the Receiver revealed that it had not conducted an adequate investigation prior to making the false accusation. (DE 70: 37). Although the undersigned will presume the good faith of the parties, the Receiver's mistake was egregious and reckless at best.
    The undersigned is further displeased with the Receiver's unprofessional and disparaging references to Amanda Finley—a member in good standing of the Florida Bar—as "Amanda." The Receiver shall address litigants appropriately in future filings.

v. Partners Nat. Health Plans, 986 F.2d 446, 450 (11th Cir. 1993). The undersigned has considered the Receiver's remaining arguments and finds them to be without merit.

### III. CONCLUSION

For the foregoing reasons, therefore, the undersigned respectfully **RECOMMENDS** that the Motion for Imposition of Equitable Lien (DE 404) be **GRANTED**. The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**DONE AND SUBMITTED** in Chambers, Fort Lauderdale, Florida, this 27th day of September 2019.

BARRY S. SELTZER
United States Magistrate Judge

Copies furnished via CM/ECF to:

The Honorable Federico A. Moreno
United States District Judge

Counsel of record