UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Case Number: 17-60907-CIV-MORENO

FEDERAL TRADE COMMISSION, et al.,

    Plaintiffs,

vs.

JEREMY LEE MARCUS, et al.,

    Defendants.
_____/

## ORDER DENYING MOTION FOR EQUITABLE LIEN

THIS CAUSE came before the Court upon Amanda Finley's Motion for Equitable Lien **(D.E. 404)**, filed on **August 29, 2020** and the Objections to the Magistrate Judge's Report and Recommendation **(D.E. 425, 426)** filed by the Receiver Jonathan Perlman and the State of Florida, with the concurrence of the co-Plaintiff, the Federal Trade Commission, on **October 11, 2020**.

THE COURT has considered the Magistrate Judge's Report and Recommendation, the objections, the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion for an equitable lien is DENIED as the Court agrees with the objections raised by the Plaintiffs and the Receiver.

### I.     Summary of Report and Recommendation

Non-party Amanda Finley filed a motion for an equitable lien on her former home. Amanda Finley was the Defendant Jeremy Marcus's spouse. She was a co-owner and tenant by the entirety of real property located at 300 Royal Plaza Drive, Fort Lauderdale, Florida 33301. Finley seeks to recover $107,500, which she claims is her real estate commission fee, which was rebated from the purchase of the property.

In the Report and Recommendation, the Magistrate Judge relied on a letter written by the Receiver to Finley asking her to quitclaim her interest in the property and "agree[ing] that [Finley] [was] not waiving any potential right [she] may have to assert an equitable lien in the property based solely on a brokerage fee [she] claim[ed] to have earned in its purchase. . . ." Finley provided the Receiver a quitclaim deed. Ultimately, the Receiver arranged a sale of the property. At the request of the Title Insurance Company, the Receiver requested that Finley execute a special warranty deed disavowing homestead interest in the property. Finley executed her special warranty deed, subject to her claim for an equitable lien. The Receiver agreed to hold $107,500 in trust pending resolution of this equitable lien claim.

The Magistrate Judge relied on the HUD-1 settlement statement and the contract for the purchase of the home to recommend that the Court find that Finley's personal funds, earned by her as the real estate sales agent, were used to rebate the property's purchase price. The Magistrate Judge found that the Receiver's letter induced her to quitclaim her property, and he opines that the Receiver, should not now, be allowed to argue that she has no equitable claim. Accordingly, the Report and Recommendation states that "[a]pplying principles of equity, [leads to the conclusion] that an equitable lien should be imposed in Finley's favor on the basis of her financial contributions to the purchase of the property."

The Magistrate Judge also concluded that denying Finley her equitable lien would result in a windfall for the Receiver. He reasoned that the "commission Finley earned as a real estate associate is independent of the underlying fraud scheme that was the genesis of the receivership." He recommended that the Court decide for that reason, the Receiver's equitable interest in the property did not extend to the sales commission.

Finally, the Magistrate Judge found that because the commission was technically paid "by the seller" the Court should not find that the sales commission was tainted.

2

## II. <u>Objections to the Report and Recommendation</u>

Both Plaintiffs, the Federal Trade Commission and the Florida Office of the Attorney General, and the Receiver filed objections to the Magistrate Judge's Report and Recommendation. The first objection is that Amanda Finley lacks standing to assert an equitable lien because the HUD statement on the sale of the property reflects that Florida Coastal Realty was the entity that credited the $107,500. The objectors also argue that Florida Statute § 475.42 precludes Finley, as the real estate salesperson, from filing an action to collect a real-estate brokerage commission. The objections also assert that because the property is now being sold for a loss of $1,250,000, there is no equity for which Finley can assert a claim. Finally, the objectors argue that Finley's interest does not take priority over the defrauded consumers.

*A. Transaction*

Finley asserts a claim for an equitable lien based on her real estate sales commission. Generally, an equitable lien is a right granted by a court of equity, which entitles someone to proceed against certain property. *Spikes v. OneWest Bank, FSB*, 106 So. 3d 475, 478 (Fla. 4th DCA 2012). She was the real estate sales person for the broker Florida Coastal Realty. She claims that Florida Coastal was contractually obligated to pay her $107,500, which she agreed to credit toward the purchase price. Finley says she made this decision based on her expectation that she would have a $107,500 proportional interest in the property as set forth in her prenuptial agreement with the Defendant Marcus. As part of the transaction, Finley received $34,250 in cash at closing. On April 5, 2018, Finley submitted a financial affidavit in the divorce proceeding with Jeremy Marcus. In that affidavit, she did not request the state court award her any interest in the home. On September 6, 2017, the Receiver sent Finley a letter asking her to quitclaim her interest in the home to Jeremy Marcus. In that letter, the Receiver agreed that Finley was not waiving any potential right to assert an equitable lien in the property based on the brokerage fee not to exceed

3

$107,500. Finley assented and provided the quitclaim deed. When the Receiver arranged the sale of the property, he requested that Finley execute a special warranty deed disavowing any homestead interest in the property. The Receiver is holding $107,500 in trust pending the resolution of Finley's equitable lien claim.

### B. Finley's Standing to Assert an Equitable Lien

Undisputedly, the HUD statement lists Florida Coastal Realty as the entity that credited the $107,500, and not Amanda Finley. Amanda Finley is listed on the purchase contract as the real estate sales associate on the transaction. The Receiver and the Plaintiffs argue that not only is Finley not the proper party to assert any claim for the real estate commission, but she is precluded from doing so by Florida Statute § 475.42(1)(d), which states:

> [N]o real estate sales associate, whether the holder of a valid and current license or not, shall commence or maintain any action for commission or compensation in connection with a real estate brokerage transaction against any person except a person registered as her or his employer at the time the sales associate performed the act or rendered the service for which the commission or compensation is due.

The Receiver and the Plaintiffs read the statute to preclude Finley's claim. Finley asserts that the statute only applies limitedly to claims by real estate sales associates against sellers of real property. *Bergin v. Kickliter*, 538 So. 2d 950 (Fla. 2d DCA 1989) is instructive on this point, when it states "[c]learly, the legislature has prohibited a real estate salesman from maintaining any action to collect a real estate brokerage commission except from his employer at the time." In that case, the Second District Court of Appeal affirmed a summary judgment finding section 475.42(1) prohibits a real estate salesman from maintaining an action to collect a commission. Although in *Bergin* the defendants were the sellers of real property, the court's reading of the statute does not limit the applicability of the statute to actions against sellers. Indeed, the statute's plain language does not limit it to actions against sellers as Finley suggests.

4

Additionally, Finley has not provided this Court with evidence of the transaction, i.e. that she was contractually entitled to the $107,500. The HUD only indicates that Florida Coastal provided the credit on the transaction. Put differently, she did not produce a contract evincing that Florida Coastal agreed to pay her this money and that she was the real party crediting the commission toward the purchase price of the home. Accordingly, this Court finds that Finley is not the proper party to assert the claim, and even if she was, Florida law precludes her from doing so.

*C. Equitable Lien*

Even if Finley was the proper party to assert a claim for the rebated real estate commission, the question arises whether the credit or rebate of a real estate commission to reduce the purchase price of the buyer and sale associate's home, gives rise to an equitable lien allowing the sales associate to recover such funds at a later date. The rebate was not a loan that Finley made to Marcus to facilitate the purchase of the home. *See Craven v. Hartley*, 102 Fla. 282, 285 (1931) (allowing an individual to obtain an equitable lien when the individual *loaned* a widow money to pay for land, and the widow declined to execute a mortgage); *Spikes*, 106 So. 3d at 478 (allowing a mortgagee to assert an equitable vendor's lien when the wife, who did not execute the mortgage, subsequently defaulted on payments on the mortgage executed by her husband); *Golden v. Woodward*, 15 So. 3d 664, 699 (Fla. 1st DCA 2009) (allowing a vendor's lien on property when party retained property without paying the agreed-upon price). The rebate of the purchase price is unlike a loan in that there was no obligation for Marcus to repay Finley for that amount. Put simply, Finley had no reasonable expectation based on the terms of the deal that she would be repaid that money, which makes it difficult for this Court to find that equity requires that she now be compensated. Finley obtained the benefit of that bargain when the purchase price was rebated. Allowing her to collect the $107,500 now is akin to giving her a windfall.

Finley asserts that her prenuptial agreement with Marcus gave her a proportional interest in the property in the amount of her $107,500 contribution. Finley, however, did not assert this interest in her financial affidavit filed in her divorce proceeding. Again, it is difficult to say that equity requires this Court to now award Finley this amount, when she did not request that the state court in her divorce safeguard that interest.

The Magistrate Judge found that the Receiver does not have an equitable lien on the property because it was turned over by the parties by stipulation subject to Finley's reservation of rights to pursue an equitable lien. In support of this position, the Report cites *In re: Fin. Federated Title & Trust, Inc.*, 347 F.3d 880, 892 (11th Cir. 2003), where the Eleventh Circuit instructed that a trustee's interest over fraudulently acquired real estate can be no greater than the amount fraudulently obtained. In *Fin. Federated*, however, the Eleventh Circuit recognized that the property was not exempt from an equitable lien in favor of a trustee where the property was originally purchased with fraudulently obtained funds. The Eleventh Circuit noted with approval that "the fact that the property had been purchased by a husband and wife was immaterial to whether an equitable lien could be imposed against the property, regardless of the spouse's innocence or lack of knowledge." *In re: Hecker*, 316 B.R. 375, 387 (Bankr. S.D. Fla. 2004) (discussing *Fin. Federated*, 347 F.3d at 890-91), *aff'd* 264 F. App'x. 786 (11th Cir. 2008). The language of *Fin. Federated* supports the conclusion that the Receiver has an equitable interest in the property, because all the cash proceeds used to purchase the property are traceable to stolen consumer funds.

Likewise, *Commodity Futures Trading Comm'n v. Hudgins*, 620 F. Supp. 2d 790, 793-794 (E.D. Tex. 2009) also supports the conclusion that the Receiver has an equitable interest in the property in the place of the defrauded consumers. In *Hudgins*, the defendant gave his innocent girlfriend $362,500 in tainted funds to pay off her debts. His girlfriend then paid the mortgage on

6

her apartment in the amount of $328,034.41. All the proceeds were traceable to the ponzi scheme and like this case, the property was worth significantly less money when the Receiver sought to place an equitable claim. The *Hudgins* court, applying Florida law, found that the Receiver had an equitable lien on the property for the fraudulently obtained funds used to pay off the girlfriend's mortgage. The court also did not allow the "innocent spouse to claim the homestead exemption where a guilty spouse used fraudulently obtained funds to purchase or pay off a mortgage." *Id.* The court further noted that it is immaterial to the court's ability to allow the Receiver to impose an equitable lien whether the fraudulently obtained funds were used to purchase a home or satisfy a mortgage. Under *Fin. Federated*, *Hecker*, and *Hudgins*, the Court finds that the Receiver can assert an equitable interest in the property because the cash proceeds used to purchase this property are traceable to stolen consumer funds.

As previously noted, the Report cites *Fin. Federated*, 347 F.3d at 892, where the Eleventh Circuit instructed that a trustee's interest over fraudulently acquired real estate can be no greater than the amount of fraudulent funds used. The Court agrees with the objectors' argument that because the Receiver is selling the property at a $1,250,000 loss, the maxim of *Fin. Federated* does not apply because the current sale price and the current appraisal are much lower than the amount of fraudulent funds used by Marcus to purchase the house in the first place. The Court does not agree with the Report's position that *Fin. Federated* dictates a different result.

### D. Priority of Liens

The Magistrate Judge found that Finley's contribution would take priority over any claim of the Receiver's. He reasoned that her contribution (in the form of the reduced purchase price) was independent of the fraud and allowing the Receiver to obtain the money would result in a windfall. *In re: Hecker*, 316 B.R. at 390 (recognizing that an innocent spouse may be entitled to

assert a claim to a portion of the proceeds prospectively to be derived from a sale of a property based on the amount of her contributions to the purchase price).

Finley's argument that the money is separately earned is unpersuasive. The undisputed forensic accounting shows that the monies for the all-cash purchase of the home are all traceable to stolen consumer funds. The HUD shows that the property was purchased with all cash from the buyer and reflects that no cash was provided by the seller at closing. The HUD shows the $107,500 was credited toward the purchase price to reduce the cash due by the buyer at closing. It is hard to see that the principle in *Hecker*, which stems from an independent contribution, is applicable here. Stated differently, this is not a case where Finley contributed $107,500 from her clean bank account toward the purchase of the home. The transaction is intertwined with the fraudulent monies and therefore, the Court does not find that Finley's interest, if any, would take priority over the Receiver's.

Finally, the Magistrate Judge noted that Finley's $107,500 contribution to reduce the purchase price of the property is akin to a purchase-money security interest, which would take priority over the Receiver's lien. *See* § 679.324, Fla. Stat. A purchase money security interest is a statutory secured interest in a consumer good or software. Such interests must be perfected under Florida Statute § 679.324. Finley's interest in a real estate commission is not a purchase money security interest in a good and the Court finds that the statutory priority rules do not apply.

**DONE AND ORDERED** in Chambers at Miami, Florida, this ____ of January 2020.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

8