UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:17-CV-60907-MORENO/STRAUSS

FEDERAL TRADE COMMISSION, *et al.*,

    Plaintiffs,

v.

JEREMY LEE MARCUS, *et al.*,

    Defendants.

_____/

**ORDER DENYING RECEIVER'S REQUEST TO COMPEL PNC
TO PRODUCE REDACTED VERSIONS OF DOCUMENTS WITHHELD
BASED UPON THE SAR PRIVILEGE**

**THIS CAUSE** has come before the Court upon the Court-appointed Receiver, Jonathan E. Perlman's ("Receiver's") Amended Receiver's Motion for *In Camera* Review of Documents Withheld Based on the SAR Privilege ("Motion") seeking review of documents withheld by third-party PNC Bank, N.A.[1] ("PNC") in the above-captioned case (DE 447).[2] The District Court referred the Motion for an Order pursuant to 28 U.S.C. 636(b)(1)(A) and (B) and the Magistrate Judge Rules of the United States District Court for the Southern District of Florida (DE 453). The Receiver's Motion (DE 447) included a request to compel PNC to produce whole or redacted versions of documents withheld pursuant to the SAR Privilege. Following a hearing (DE 467; DE 471), this Court issued its Order on the Motion (DE 468) stating that "a further Order will follow

---

[1] PNC is a "national bank." *See* The PNC Financial Services Group, Inc., Annual Report (Form 10-K) at 1, (Mar. 02, 2020). Pursuant to the Bank Secrecy Act, national banks are required to file a suspicious activity report ("SAR") to report certain suspicious activity to a person or agency designated by the Secretary of the Treasury. 31 U.S.C. § 5318(g); 12 C.F.R. § 21.11. However, SARs are confidential as more fully described *infra*, and banks by regulation are prohibited from disclosing a SAR (the "SAR Privilege"). 12 C.F.R. § 21.11(k)(1)(i).

[2] The Motion is styled so as to request a single relief—*in camera* inspection.

after the Court receives . . . supplemental briefings and completes [an] *in camera* review." *Id.* at 3. Following review of the submitted documents and having considered the record, the parties' briefs (DE 448; DE 449; DE 473; and DE 474), oral arguments (DE 471) and being otherwise duly advised in the premises, the Court **DENIES** the Receiver's request to compel PNC to produce whole or redacted versions of the documents withheld based upon the SAR Privilege for the reasons more fully set forth herein.

I. BACKGROUND

   A. Procedural Background

The underlying action in this case was brought by the Federal Trade Commission ("FTC") and the State of Florida against Defendants for violating Section 13(b) of the FTC Act, 15 U.S.C. § 53(b); the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101-6108; and the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes (2016), Fla. Stat. § 501.201, *et seq.* (DE 1). The Complaint alleges that Defendants defrauded consumers through a "massive scheme to offer [victims] phony debt relief services, including fake loans." *Id.* at 5. The Court first issued a Preliminary Injunction Order (DE 21) and later an order for permanent injunctive relief and final judgment against Defendants (DE 293). The Court appointed the Receiver to recover assets for the benefit of the victims (DE 21: DE 293; DE 428). In pursuing its directive, "[t]he Receiver issued a subpoena *duces tecum* to PNC seeking documents relevant to the Receiver's investigation into potential assets of the receivership estate" (DE 357 at 2). Thereafter, a dispute arose between the Receiver and PNC as to, among other things, the scope of the Receiver's authority to engage in discovery with PNC (DE 357; DE 363; DE 365).

Following the Receiver's motion to compel PNC to comply with subpoenas (DE 357), the

Court referred the motion to compel to the Honorable Barry S. Seltzer, United States Magistrate Judge, for a Report and Recommendation ("Report") (DE 367). The Report recommended denial of the motion to compel due to the Receiver filing it beyond the thirty (30) day period prescribed by Local Rules and for "fail[ure] to establish that the discovery sought was relevant and proportional to the needs of this case" (DE 380 at 1). In its Order Adopting in Part Magistrate Judge's Report and Recommendation ("Order Adopting the Report"), the District Court denied the Receiver's motion to compel pertaining to PNC's Anti-Money Laundering policies and other anti-fraud polices as not related to the ability to recover assets in this case (DE 427 at 3). The District Court granted, however, the Receiver's motion to compel relative to bank-generated investigation reports of the Defendants because, "to the extent these reports, and the underlying assets allow the Receiver to recover and prevent dissipation of assets, they are related to the goals of this litigation." *Id.* at 2. Further, the District Court instructed that PNC could "provide the Receiver with a privilege log to the extent the documents are privileged under the Bank Secrecy Act." *Id.* at 2-3. PNC subsequently provided the Receiver with its privilege log ("Privilege Log") (DE 447 at 7-10) identifying documents "containing information concerning a decision whether to file or not file a Suspicious Activity Report" (DE 447 at ¶ 3). The documents that PNC withheld are the subject of the parties' present dispute.

      B.    <u>The Motion</u>

In its Motion, the Receiver explains that the dispute with PNC involves "the scope of the SAR privilege." *Id.* at ¶ 4. The Receiver seeks production of documents or information in documents listed on PNC's Privilege Log, "to the extent the Court determines that a document contains information that is not protected." *Id.* at ¶¶ 5-6; p. 3. Specifically, the Receiver seeks "a version of the document[s] redacted to the extent necessary to protect the privileged information

within the document." *Id.* The Receiver quotes the Court's Order Adopting the Report, which stated that the SAR Privilege "extends to [SARs], but not to underlying documents" (DE 447 at 2; DE 427 at 2) (citing *Shapiro, P.A. v. Wells Fargo Bank, N.A.*, No. 18-60250-CIV-HUNT, 2018 WL 4208225, *1 (S.D. Fla. July 23, 2018) (hereinafter *Shapiro*). PNC responds that the documents identified on its Privilege Log are "[d]ocuments falling within the SAR Confidentiality Rule [and] are properly withheld in their entirety" (DE 428 at ¶ 6) (citing *Shapiro*, No. 18-civ-60250, 2018 U.S. Dist. LEXIS 219188, at *4 (S.D. Fla. July 23, 2018)). The Receiver replies that PNC repeatedly relies on an "over-broad interpretation of the SAR privilege that this Court *already rejected* when it ruled that the 'privilege extends to [SARs], but not to underlying documents.'" *See* DE 449 at 1 (emphasis in original) (quoting the Court's Order Adopting the Report (DE 427)). The Receiver also argues that "the law in this Circuit and the opinion of the OCC is that PNC must produce the documents with references to the SAR redacted." *Id.* at 1-2 (citing cases in support as well as an OCC letter ("OCC Letter") attached as Composite Exhibit C to DE 403).

    C.    <u>Oral Argument</u>

On March 5, 2020, the Court heard oral argument on the Motion (DE 467, 471). At the hearing, counsel for the parties stated their respective positions. The Receiver's position is that if "you have a document that is not a SAR, but it says we decided to file a SAR[,] . . . [then] the appropriate thing is for that document to be produced, with that statement . . . redacted" (DE 471 at 5, ¶¶ 8-11). PNC's position is that "redactions will be insufficient in regard[] to not disclosing with these particular forty documents as to whether or not a SAR was or was not filed" (DE 471 at 7, ¶¶ 17-20). PNC also argued that the documents reveal "nothing about assets held by third parties anywhere" and that they would "not assist the receiver pursuing other parties in the underlying FTC action" (DE 471 at 7, ¶ 21 - 9, ¶ 11).

- 4 -

Nonetheless, PNC proposed an approach to redaction in the event the Court ordered redaction. Accordingly, along with a binder containing all withheld documents, PNC provided the Court with two examples of proposed redactions ("Exemplars") corresponding to: (1) Entry No. 5 on the Privilege Log (DE 447 at 8) (marked by PNC as MORENO000018), and (2) Entry No. 35 on the Privilege Log (DE 447 at 9) (marked by PNC as MORENO000160). The Exemplars illustrate PNC's proposed redactions of the two primary types of documents listed on the Privilege Log (DE 471 at 8, ¶¶ 23-26). The Court agreed to examine the Exemplars relative to the binder of documents PNC submitted to ensure that PNC's selection of examples did not in any way favor PNC (DE 471 at ¶¶ 24-25). Counsel for the Receiver and PNC agreed that, if following review, the Court is satisfied that the Exemplars did not favor PNC, the Court's direction on production and redaction utilizing the Exemplars would be sufficiently illustrative to enable the Receiver and PNC to resolve their disclosure dispute on the remainder of the documents (DE 471 at 17, ¶¶ 1-21; 22, ¶¶ 8-10; 24, ¶ 22 – 25, ¶ 13).[3]

On March 6, 2020, the undersigned issued an Order Granting Amended Receiver's Motion for *In Camera* Review of Documents Withheld Based on the SAR Privilege ("Order Granting *In Camera* Review") (DE 468). In its Order Granting *In Camera* Review, the Court Ordered by March 12, 2020 additional briefing as to whether PNC's reference to CARs is actually a reference to SARs or otherwise falls within the SAR Privilege. *See* DE 468 at 2-3. Both PNC and the Receiver submitted supplements (DE 473; DE 474). The Court advised that a further Order would follow to address the Receiver's request within its Motion (DE 447) for the Court to compel PNC to produce whole or redacted versions of the documents listed on PNC's Privilege Log (DE 447 at

---

[3] Despite the Court's announced plan at the hearing to only review the Exemplars, the Court ultimately reviewed all of the documents submitted. The Court's analysis and conclusions below reflect this review of all the documents and apply uniformly to all the documents.

7-10). The Court has carefully considered the briefings, the parties' oral arguments, the record and the relevant authority, and has conducted a detailed *in camera* review of the Privilege Log and all of the documents corresponding to it that PNC submitted for review. The Court finds that the withheld documents are subject to the SAR Privilege for the reasons stated below.

## II. LEGAL STANDARDS

The party invoking a privilege has the burden to prove the privilege exists. *See United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991) (citation omitted) (addressing the attorney-client privilege). "[W]hen possible, privileges should be construed narrowly." *Pierce Cty., Wash. v. Guillen*, 537 U.S. 129, 144-46 (2003) (explaining that privileges are construed narrowly to avoid "suppress[ing] otherwise competent evidence") (internal quotations and citations omitted).

By regulation, SARs are confidential. Banks are prohibited from responding to a discovery request for a SAR or any information that would reveal the existence of a SAR:

> (k) Confidentiality of SARs. A SAR, and any information that would reveal the existence of a SAR, are confidential, and shall not be disclosed except as authorized in this paragraph (k).
>
> (1) Prohibition on disclosure by national banks—(i) General rule. No national bank, and no director, officer, employee, or agent of a national bank, shall disclose a SAR or any information that would reveal the existence of a SAR. Any national bank, and any director, officer, employee, or agent of any national bank that is subpoenaed or otherwise requested to disclose a SAR, or any information that would reveal the existence of a SAR, shall decline to produce the SAR or such information, citing this section and 31 U.S.C. 5318(g)(2)(A)(i), and shall notify the following of any such request and the response thereto:
>
>> (A) Director, Litigation Division, Office of the Comptroller of the Currency[("OCC")]; and
>>
>> (B) The Financial Crimes Enforcement Network (FinCEN).

12 C.F.R. § 21.11(k)(1)(i). Thus, courts have found that the SAR Privilege is an unqualified discovery and evidentiary privilege that a financial institution is not permitted to waive. *Wiand v. Wells Fargo Bank, N.A.*, No. 812CV00557T27EAJ, 2013 WL 12157564, at *1 (M.D. Fla. Dec. 11, 2013) (internal quotations and citation omitted).

Both the OCC and FinCEN explain that the SAR Privilege, serves to ensure "that . . . the persons involved in the transaction and identified in the SAR cannot be notified, directly or indirectly, of the report." 75 FR 75576-01 at 75579; 75 FR 75593-01 at 75595. In clarifying the scope of the SAR Privilege intended to prevent such disclosure, these agencies have said that "information that would reveal the existence of a SAR" includes "[a]ny document or other information that affirmatively states that a SAR has been filed" and any document stating that a SAR has not been filed." 75 FR 75576-01 at 75579; 75 FR 75593-01 at 75595. Furthermore, both agencies contend that:

> the strong public policy that underlies the SAR system as a whole—namely, the creation of an environment that encourages a national bank to report suspicious activity without fear of reprisal—leans heavily in favor of applying SAR confidentiality not only to a SAR itself, but also in appropriate circumstances to material prepared by the national bank as part of its process to detect and report suspicious activity, regardless of whether a SAR ultimately was filed or not.

75 FR 75576-01 at 75579; 75 FR 75593-01 at 75595.[4] Both agencies also claim that "[t]his interpretation reflects relevant case law." 75 FR 75576-01 at 75579; 75 FR 75593-01 at 75595. In support of their claim, the agencies include a footnote as follows:

> *See, e.g.*, *Whitney* at 682-83 (holding that the SAR confidentiality provision protects, inter alia, "communications preceding the filing of a SAR and preparatory or preliminary to it; communications that follow the filing of a SAR and are explanations or follow-up discussion; or oral communications or [sic] suspected or

---

[4] *See Smiley v. Citibank (S. Dakota), N.A.*, 517 U.S. 735, 739, 116 S. Ct. 1730, 1733, 135 L. Ed. 2d 25 (1996) (applying *Chevron* deference to the OCC's interpretation of banking laws and citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–845 (1984) and *NationsBank of N. C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256–257 (1995)).

possible violations that did not culminate in the filing of a SAR"); *Cotton* at 815 (holding that "documents representing the drafts of SARs or other work product or privileged communications that relate to the SAR itself * * * are not to be produced [in discovery] because they would disclose whether a SAR has been prepared or filed"); *Union Bank of California, N.A. v. Superior Court*, 29 Cal. Rptr. 2d 894, 902 (2005) [(hereinafter *Union Bank*)] (holding that "a draft SAR or internal memorandum prepared as part of a financial institution's process for complying with Federal reporting requirements is generated for the specific purpose of fulfilling the institution's reporting obligation * * * [and] fall within the scope of the SAR [confidentiality] privilege because they may reveal the contents of a SAR and disclose whether 'a SAR has been prepared or filed'" (quoting 12 CFR 21.11(k) (2005)).

75 FR 75576-01, at 75579, n. 23 (citing *Whitney Nat. Bank v. Karam*, 306 F. Supp. 2d 678, 682-83 (S.D. Tex. 2004) and *Cotton v. PrivateBank & Tr. Co.*, 235 F. Supp. 2d 809, 815 (N.D. Ill. 2002)); *see also* 75 FR 75593-01, at 75595, n. 15.

The SAR Privilege does not include, however, "the underlying facts, transactions, and documents upon which a SAR is based." 75 FR 75576-01. Accordingly, courts have held that "'supporting documentation' giving rise to a SAR that is generated or received in the ordinary course of business is discoverable." *Lesti v. Wells Fargo Bank, N.A.*, No. 211CV695FTM29DNF, 2014 WL 12828854, at *1 (M.D. Fla. Mar. 4, 2014) (citing *Union Bank*, 29 Ca. Rptr. 3d at 901).

In clarifying the distinction between discoverable and privileged documents, the *Lesti* Court described two categories of supporting documents (respectively, "Category One" and "Category Two") following *Cotton*, 235 F. Supp. 2d at 815:

> [1] factual documents which give rise to suspicious conduct. These are to be produced in the ordinary course of discovery because they are business records made in the ordinary course of business[; and] . . .
>
> [2] documents representing drafts of SARs or other work product or privileged communications that relate to the SAR itself. These are not to be produced because they would disclose whether [or not] a SAR has been prepared or filed.

*Lesti*, 211CV695FTM29DNF, 2014 WL 12828854, at *1 (internal quotation and citation omitted). *See also Shapiro,* No. 18-60250-CIV-HUNT, 2018 WL 4208225 at *1–2 (discussing Category

One and Category Two documents and quoting and citing *Wiand*, No. 8:12-CV-557-T-27EAJ, 2013 WL 12157564, at *2, and *Regions Bank v. Allen*, 33 So. 3d 72, 76–77 (Fla. 5th DCA 2010) (hereinafter *Regions Bank v. Allen*)).

Elaborating further, the Court in *Lesti* described Category Two documents as those which have been "prepared as part of a financial institution's process for complying with federal reporting requirements [and] generated for the specific purpose of fulfilling the institution's reporting obligation." *Id.* (internal quotation and citation omitted). Thus, the Court there determined that documents of this kind are properly withheld under the SAR Privilege "because they may reveal the contents of a SAR and disclose whether a SAR has been prepared or filed." *Lesti*, 211CV695FTM29DNF, 2014 WL 12828854, at *1 (internal quotation and citation omitted); *but see Freedman & Gersten, LLP v. Bank of Am., N.A.*, No. CIV.A. 09-5351 SRC, 2010 WL 5139874, at *3 (D.N.J. Dec. 8, 2010) (permitting disclosure of "any memoranda or documents drafted in response to the suspicious activity at issue " that were produced in the ordinary course of the bank's standard practice of investigating suspicious activity while precluding the bank from producing SARs or previous drafts of SARs and "from stating whether certain facts are contained in the SARs themselves").

Moreover, in *Wiand*, United States District Court Judge James D. Whittemore distinguished "[protected Category Two] reports of an evaluative nature intended to comply with federal reporting requirements . . . [from Category One] reports generated by the bank in the ordinary course of business in monitoring unusual activity [that] are not protected." *Wiand v. Wells Fargo Bank, N.A.*, No. 812CV00557T27EAJ, 2013 WL 12157564, at *3 (M.D. Fla. Dec. 11, 2013) (internal quotations omitted).

With these standards in mind, the Court next addresses the Receiver's request to compel

the production of whole or redacted versions of the documents PNC listed on its Privilege Log ("PNC Documents") (DE 447 at 7-10).

III. DISCUSSION

The PNC Documents are primarily comprised of "alerts" and "cases"[5] (DE 471 at 8 ¶¶ 12-19). PNC asserts that all of the PNC Documents are "internal bank documents related to the implementation of its anti-money laundering policies" (DE 471 at 8, ¶¶ 5-6). Additionally, PNC argues that these documents reveal "the processes and algorithms that are used to detect suspicious activity" for federal reporting purposes (DE 471 at 9, ¶ 21 -14, ¶ 10). According to PNC, the documents show "how certain alerts feed into certain cases . . . [because] there are codes and designations . . . of how the bank sets its own thresholds for its underlying computer system . . . and then certain transactions are given a numeric designation . . . to suggest whether it is a high or low risk, etc." (DE 471 at 11, ¶¶ 16-25). Furthermore, PNC contends that, even without a roadmap such as PNC's policies and procedures would provide, the PNC Documents make known "the sort of thing[s] the bank is looking at and how they value it and how they try to detect suspicious activity for the benefit of law enforcement downstream, of course, for SARs" (DE 471 at 13, ¶ 14 - 14, ¶ 4). Moreover, PNC argues that, despite a confidentiality agreement, there is a risk of the documents ending up in the public domain because the Receiver is free to share documents disclosed to him with the FTC and the State of Florida, and Florida's Sunshine law creates

---

[5] The Court notes that the PNC Documents vary in length from two (2) to fifteen (15) pages. In addition to cases and alerts, the Court observes that there are four instances of "investigations" based upon reported incidents (DE 447 at 7-10, items 11, 32, 33, and 39) (items 32 and 33, however, are duplicates). All investigations correspond to a case that is listed in sequence to its related investigation (DE 447 at 7-10). All of the Court's findings pertaining to cases and alerts also apply to the listed investigations. Indeed, the investigations are similar to alerts in that they are preliminary documents that may lead to cases. *See* DE 471 at 8 ¶¶ 12-15.

uncertainty as to PNC's ability to protect public disclosure of the documents[6] (DE 471 at 10, ¶¶ 2-25). Finally, PNC argues that the nature of the documents makes redaction inadequate and cites in support *Regions Bank v. Allen* (DE 471 at 29, ¶¶ 6-9). 33 So. 3d 72 (finding insufficient a general policy of redacting, from any document requested, explicit statements regarding SAR filings and citing as guidance the two categories of documents identified in *Cotton*, 235 F. Supp. 2d at 815).

The Receiver argues nonetheless that, at a minimum, redacted versions of the PNC Documents are subject to discovery because: 1) the District Court rejected PNC's interpretation of the SAR Privilege's scope and directed redaction of the PNC Documents to the extent that information contained in the documents serves the Receiver's goal of preserving or recovering assets; 2) the state of the law in this Circuit requires the Court to order PNC to produce the PNC Documents with references to SARs redacted; and 3) the OCC's opinion is that the PNC Documents are subject to disclosure following redaction of SAR references (DE 449 at 1-2). The Receiver's arguments are unavailing for the reasons that follow.

With respect to the District Court rejecting PNC's interpretation of the SAR Privilege's scope, this Court agrees with the Receiver that the District Court held that "[t]he privilege extends to [SARs] but not to underlying documents" (DE 427 at 2; DE 449 at 1). The Receiver, however, misconstrues the meaning of "underlying documents." As the Receiver notes, the District Court cited *Shapiro,* No. 18-60250-CIV-HUNT, 2018 WL 4208225 at *1. The Court in *Shapiro* granted the motion to compel only "to the extent it [sought] any <u>factual</u> documents created in the ordinary course of business that may have given rise to a [SAR]," and it denied the motion to compel "to the extent it request[ed] any SARs or documents that might reveal whether a SAR has been

---

[6] The Court does not opine as to the effectiveness of the confidentiality agreement in this case.

prepared or filed." *Shapiro,* No. 18-CIV-60250, 2018 WL 4208225, at *2 (emphasis added). Thus, the District Court did not reject PNC's interpretation but merely stated the law. Furthermore, the law cited is inapposite to the Receiver's conception of what is protected under the SAR Privilege because the Receiver seeks more than factual supporting documents. *See* DE 471 at 19, ¶ 12 – 21, ¶ 17) (explaining that the Receiver is seeking narrative portions of the documents to the extent that the narrative does not explicitly state whether or not a SAR has been filed). Narrative sections, however, of "reports of an evaluative nature intended to comply with federal reporting requirements" are protected. *Wiand*, No. 812CV00557T27EAJ, 2013 WL 12157564, at *3.

Like the *Union Bank* Court, this Court recognizes that "[not] all reports of suspicious activity are protected by the SAR privilege." *Union Bank*, 29 Cal. Rptr. 2d at 903. This Court is also cognizant that "privileges should be narrowly construed because they prevent otherwise admissible and relevant evidence from coming to light." *Id.* Furthermore, the Court understands that "[a] bank may not cloak its internal reports and memoranda with a veil of confidentiality simply by claiming they concern suspicious activity or concern a transaction that resulted in the filing of a SAR." *Id.* The regulations governing the SAR privilege, however, recognize that it applies "in appropriate circumstances to material prepared by the national bank as part of its process to detect and report suspicious activity, regardless of whether a SAR ultimately was filed or not. 75 FR 75576-01 at 75579; 75 FR 75593-01 at 75595. Here, the Court finds no manipulation of the SAR Privilege to prevent disclosure of internal reports and memoranda that merely concern suspicious activity unrelated to the process of complying with federal reporting requirements. Instead, the Court's review affirms that the PNC Documents represent "material of an evaluative nature" prepared for the specific purpose of complying with federal reporting requirements. *Wiand*, No. 812CV00557T27EAJ, 2013 WL 12157564 at *3. Furthermore, all of the documents

explicitly state whether or not a SAR was filed.[7] As such, the Court concludes the PNC Documents are subject to the SAR Privilege in their entirety. *Id.*

The Receiver's second argument, that the law in this Circuit mandates production of redacted versions of the PNC Documents to remove SAR references, likewise fails. As the Court discusses above, *Shapiro*, which the Receiver cites as authority and which the District Court cited, applies to this case. *Shapiro* follows the case law cited by the regulators, including *Cotton*, to distinguish underlying documents that are protected from those that are not protected. *See generally Shapiro,* No. 18-CIV-60250, 2018 WL 4208225. *Shapiro* does not stand for the proposition that all documents that are not SARs are disclosable once redacted to remove references to SAR filings. *See id.* In addition, other cases cited by the Receiver do not support its position that everything except explicit statements regarding the filing of a SAR are subject to disclosure. For example, in *Perlman v. Bank of Am.*, *N.A.*, the Court did not simply "order[ ] [the] bank to produce redacted documents so as to not reveal [the] existence of [a] SAR" (DE 449 at 2). No. 11CV80331HURLEYHOPKINS, 2014 WL 12300315, at *1 (S.D. Fla. Sept. 10, 2014). Rather, the Court stated that:

> A review of both the redacted and unredacted versions of the documents Plaintiff seeks to compel, as well as the documents Defendant objects to producing entirely, reveals that Defendant has limited its redactions to only those documents and portions of documents protected under the SAR privilege.

Accordingly, this Court disagrees with the Receiver that the law in this Circuit requires disclosure of the PNC Documents except for statements regarding whether a SAR was filed. The undersigned concludes, rather, that the law in this Circuit supports a thoughtful and careful approach in order to distinguish "factual documents created in the ordinary course of business that

---

[7] The Court finds that what PNC designates as "CARs" are actually SARs. As such, they are subject to the SAR Privilege. *See* DE 473.

may have given rise to a [SAR]" from "documents that might reveal whether a SAR has been prepared or filed." *Shapiro*, No. 18-CIV-60250, 2018 WL 4208225, at *2. Having concluded that the PNC Documents fall into the latter category, the Court finds that the Receiver's argument is without merit.[8]

The Receiver's third argument is that the opinion in the OCC Letter (DE 403-3) supports production of the PNC Documents following redaction of SAR references. This argument also fails. The OCC Letter pertains to a Court directive in *Coquina Investments v. Rothstein, et al.* for TD bank to "make a request for disclosure of non-public OCC information" utilizing "the procedures set forth in 12 C.F.R. 4.33(a)."[9] No. 0:10-cv-60786-MGC (S.D. Fla. Nov. 18, 2011) (hereinafter *Rothstein*), DE 656. *See also Rothstein*, No. 10-60786-CIV, 2012 WL 4479057, *1 (S.D. Fla. Sept. 28, 2012), *aff'd sub nom. Coquina Investments v. TD Bank, N.A.*, 760 F.3d 1300 (11th Cir. 2014) (explaining background of underlying action for context). In the *Rothstein* case, the District Court required Defendant TD Bank to contact the OCC regarding Plaintiff's Ore Tenus Motion to compel Defendants' production of unredacted document[s] reflecting records of SARs. *Rothstein*, No. 0:10-cv-60786-MGC (S.D. Fla. Nov. 18, 2011), DE 641. The OCC Letter resulted from that Court's directive and addressed "disclosure of non-public OCC information." *Id.* at DE 656. In addressing the instant litigation, the issue of non-public OCC information disclosure is not before this Court. Therefore, this Court finds the OCC Letter (DE 403-3) inapplicable to the Receiver's request for redacted versions of the PNC Documents.

---

[8] To the extent redaction could theoretically provide sufficient protection of the privilege, the Court did consider PNC's proposed redactions to the Exemplars. PNC's proposed redactions to these alerts and cases are extensive, but, in light of the foregoing analysis, are also justified. The Court determined that these extensive redactions would render the redacted versions unusable.

[9] 12 C.F.R. § 4.33 is titled: "Requirements for a request of records or testimony", and it sets forth procedures for seeking non-public OCC information.

IV. CONCLUSION

Accordingly, it is hereby **ORDERED** that the Receiver's request to compel PNC to produce whole or redacted versions of the documents listed on the Privilege Log (DE 447 at 8-10), is **DENIED**.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 26th day of March 2020.

Jared M. Strauss
United States Magistrate Judge

Copies furnished via CM/ECF to all Counsel of Record