**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

FILED BY ____AP____ D.C.
Apr 26, 2021
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 26, 2021

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 20-10832-JJ
Case Style: Federal Trade Commission, et al v. Amanda Finley
District Court Docket No: 0:17-cv-60907-FAM

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Lois Tunstall
Phone #: (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

# UNITED STATES COURT OF APPEALS
## For the Eleventh Circuit

_____

No. 20-10832

_____

District Court Docket No.
0:17-cv-60907-FAM

FEDERAL TRADE COMMISSION,
STATE OF FLORIDA,

                        Plaintiffs - Appellees,

JONATHAN E. PERLMAN,

                        Temporary Receiver - Appellee,

versus

JEREMY LEE MARCUS,
individually and as an officer, director, member,
manager; or owner of all named corporate
defendants, et al.,

                        Defendants,

AMANDA ELIZABETH FINLEY,

                        Claimant - Appellant.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: March 03, 2021
For the Court: DAVID J. SMITH, Clerk of Court
By: Jeff R. Patch

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10832
Non-Argument Calendar
_____

D.C. Docket No. 0:17-cv-60907-FAM

FEDERAL TRADE COMMISSION,
STATE OF FLORIDA,

                                                                   Plaintiffs-Appellees,

JONATHAN E. PERLMAN,

                                                  Temporary Receiver-Appellee,

versus

JEREMY LEE MARCUS,
individually and as an officer, director, member,
manager; or owner of all named corporate
defendants, et al.,

                                                                    Defendants,

AMANDA ELIZABETH FINLEY,

                                                                    Claimant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 3, 2021)

Before JILL PRYOR, LUCK, and ED CARNES, Circuit Judges.

ED CARNES, Circuit Judge:

Jeremy Marcus bought a 7,568 square-foot waterfront mansion in Fort Lauderdale for $5,250,000. His then-wife, Amanda Finley, acted as the buyer's real estate agent for the purchase of the property and received a commission on the sale. She accepted part of that commission in cash, and the rest was used as a "rebate" that reduced the purchase price of the house. As it turns out, Marcus was engaged in a multimillion-dollar consumer debt fraud scam, and all the cash he used to purchase the house was derived from his fraudulent activities.

After his scheme unraveled, the Federal Trade Commission and the State of Florida sued Marcus. The district court created a receivership to benefit the victims of the scheme and appointed a receiver. The court ordered Marcus to turn over to the receiver title and possession of the house so that it could be sold and the proceeds distributed to the victims of Marcus' fraud. Finley moved for the imposition of an equitable lien on the property in an amount equal to the part of her

commission rebate that went toward the purchase price.[1] The district court denied her motion for an equitable lien, and this is her appeal.

I.

As a licensed real estate agent, Finley worked with a broker, Florida Coastal Realty Group. Under the terms of the purchase contract for the house that Marcus bought for $5,250,000, the seller paid the broker a 3% commission, which totaled $157,500 and was paid from the purchase proceeds. The broker kept $15,750 of that amount for its contractual fee, and the remaining $141,750 was Finley's commission. She elected to receive $34,250 of that amount in cash at closing and used the remaining balance of $107,500 as a "rebate" that was credited toward the purchase price of the house, in effect lowering the amount Marcus had to pay for the property by that much.

It is undisputed that Marcus used money that he stole from his victims to purchase the house with cash, and Finley resided with Marcus in the luxury home for 18 months, rent and mortgage free. Finley contends, however, that her commission was separate from the fraudulent transaction because it came from

---

[1] The receiver had arranged to sell the house for $4 million before Finley moved for an equitable lien. In connection with the sale, the title company required that Finley execute a special warranty deed releasing any homestead claim or interest she had in the house. Finley refused to do so without a guarantee from the receiver that he would pay her $107,500 from the sale proceeds. To avoid stalling the sale, the receiver agreed to hold the $107,500 in trust pending the district court's determination about Finley's entitlement to the money. It is still there.

"clean funds" paid by the seller. But "clean" is not an accurate description of the funds. "Laundered" might be more accurate. The money used by the seller to pay the commission came from the purchase money for the house, all of which was from Marcus' fraudulent schemes. As the district court found, "The undisputed forensic accounting shows that the monies for the all-cash purchase of the home are all traceable to stolen consumer funds." What happened is that some of the proceeds from the fraud that Finley's husband had committed went to the seller of the house, and part of that went from the seller to Finley, and part of that part went from her back to the seller.

Finley argues that she had a reasonable expectation she would be repaid the $107,500 that she furnished toward the purchase price if the house were ever sold. As she sees it, the receiver (and through him the victims of the fraud) would be unjustly enriched if allowed to keep Finley's contribution to the purchase of the property. The district court disagreed. This is her appeal from the court's refusal to grant her an equitable lien on the property.

## II.

We review only for abuse of discretion a district court's decision to deny equitable relief; any underlying questions of law are reviewed de novo, and findings of fact upon which the decision was made are reviewed only for clear error. See Preferred Sites, LLC v. Troup Cty., 296 F.3d 1210, 1220 (11th Cir.

4

2002); see also Cox Enters., Inc. v. Pension Benefit Guar. Corp., 666 F.3d 697, 701 (11th Cir. 2012) ("The district court's distribution of assets in a receivership is an equitable decision that we review for abuse of discretion.").

State law applies when determining whether an equitable lien should be imposed on real property. See, e.g., In re Fin. Federated Title & Tr., Inc., 347 F.3d 880, 886–87 (11th Cir. 2003) (applying Florida law). In Florida, an equitable lien may be awarded based on the "general consideration of right or justice as applied to the relations of the parties and the circumstances of their dealings in the particular case." Jones v. Carpenter, 106 So. 127, 129 (Fla. 1925). In Jones, the Florida Supreme Court allowed the trustee of a bankrupt company to have an equitable lien on the house of the company's former president because the property had been improved by funds embezzled from the company. See id. at 129–30. The court explained that equitable liens "are applied only in cases where the law fails to give relief and justice would suffer without" the imposition of a lien. Id. at 129.

The Florida Supreme Court has recognized that the imposition of an equitable lien in a creditor's favor may be appropriate to prevent unjust enrichment. See Palm Beach Sav. & Loan Assoc., F.S.A. v. Fishbein, 619 So. 2d 267, 270–71 (Fla. 1993). In that case, a husband forged his wife's signature and fraudulently obtained a fourth mortgage in the amount of $1,200,000 on the house

5

that he owned jointly with her. Id. at 268. He used $930,000 of the loan proceeds to pay the existing mortgages and taxes on the house and used the rest for "other purposes." Id. at 268. The wife, who had thought that the earlier mortgages had been satisfied and was unaware of the fourth mortgage, later sought to prevent the fourth mortgage lender from obtaining a lien on the house. Id. at 269.

The court determined that the lender was entitled to an equitable lien on the house in the amount of the loan funds that were used to satisfy the preexisting mortgages. Id. at 271. The court concluded that there was "substantial evidence to support the finding that [the wife] stands in no worse position than she stood before the execution of the mortgage" because her husband's fraudulent action merely substituted another mortgage for the preexisting ones. Id. at 270–71. The court reasoned that to hold otherwise would allow the wife to be unjustly enriched based on the fraudulent action, and that was no less true because she was not complicit in the fraud. See id. at 271.

Applying Florida law, this Court has recognized that an equitable lien may be a remedy for creditors "'where funds obtained through fraud or egregious conduct were used to invest in, purchase or improve the homestead.'" In re: Fin. Federated Title & Tr., 347 F.3d at 888 (quoting Havoco of America, Ltd. v. Hill, 790 So. 2d 1018, 1028 (Fla. 2001)). In that case, funds obtained through a husband's fraudulent scheme were used to purchase property that he jointly owned

with his wife, and a bankruptcy court imposed an equitable lien on the property. Id. at 884–85, 892.  We adopted the bankruptcy court's opinion, which rejected the wife's argument that her "lack of knowledge or involvement in [her husband's] massive fraudulent activity exonerate[d] her from liability."  Id. at 890.  Regardless of the co-owner's lack of knowledge of the fraud, it was "the fraudulent nature of the funds" involved in the purchase that was "of utmost importance."  Id.  Because the wife "would be in the same position" after imposition of the equitable lien as she had been in "before the fraudulent transfers," it was appropriate for the court to grant the receiver an equitable lien on the house.  Id. at 891.

In this case, the district court determined that the receiver had an equitable interest in the property, which was purchased with proceeds of fraud, and any interest that Finley had should not take priority over the interest of the receiver (read: the fraud victims).  The court rejected as unpersuasive Finley's argument that her commission was separately earned.  In doing so, the court noted that the closing documents showed that the property was purchased with cash from Marcus and no cash from the seller, and it concluded that the transaction was "intertwined with the fraudulent monies."

The district court did not abuse its discretion in denying Finley's motion for an equitable lien.  If Marcus had not purchased the $5.25 million property with the fruits of his fraud, Finley, who acted as his agent, would not have earned any

7

commission at all. Without the equitable lien Finley is in no worse position than if her husband had not committed the massive fraud he did. She actually is in a better position as a result of his fraud because she got to keep the $34,250 part of her commission that she was paid in cash, which she would never have received if the fraud proceeds had not been used to purchase the property. Not only that, but she also got to live in a 7,568 square-foot waterfront mansion rent free for a year and half.

The Florida Supreme Court has made clear that equitable liens arise "out of general consideration of right and justice" and should only be granted where "justice would suffer without them." Jones, 106 So. at 129. A general consideration of right and justice does not require adding to the gains that Finley has already received because of her husband's fraud an additional $107,500. Especially since that money would indirectly, but surely, come out of the pockets of the fraud victims. The result she seeks does not arise out of any consideration of right and justice, which would suffer from it. Equity and the law would not countenance that result, much less require it.

**AFFIRMED.**

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

March 03, 2021

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 20-10832-JJ
Case Style: Federal Trade Commission, et al v. Amanda Finley
District Court Docket No: 0:17-cv-60907-FAM

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against appellant.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Tiffany A. Tucker, JJ at (404)335-6193.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs