UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-60907-CIV-MORENO/SELTZER

FEDERAL TRADE COMMISSION, et al.,

    Plaintiffs,

v.

JEREMY LEE MARCUS, et al.,

    Defendants.
_____/

**RECEIVER JONATHAN E. PERLMAN'S FINAL STATUS REPORT AND MOTION TO (I) CLOSE OUT RECEIVERSHIP PROCEEDING, (II) ABANDON ESTATE PROPERTY, (III) APPROVE FINAL DISTRIBUTION, AND (IV) DISCHARGE THE RECEIVER AND HIS PROFESSIONALS**

Jonathan E. Perlman, court-appointed Receiver of Receivership Defendants[1], by and through undersigned counsel, hereby files this Final Status Report and Motion to (I) Close Out Receivership Proceeding, (II) Abandon Estate Property, (III) Approve Final Distribution, and (IV) Discharge the Receiver and his Professionals (the "Motion").

---

[1] The "Receivership Defendants" means Financial Freedom National, Inc. f/k/a Institute for Financial Freedom, Inc. and Marine Career Institute Sea Frontiers, Inc. also d/b/a 321 Loans, Instahelp America, Inc., Helping America Group, United Financial Support, Breeze Financial Solutions, 321Financial Education, Credit Health Plan, Credit Specialists of America, American Advocacy Alliance, and Associated Administrative Services; 321Loans, Inc., f/k/a 321 Loans, Inc. also d/b/a 321Financial, Inc.; Instahelp America, Inc. f/k/a Helping America Team, Inc. also d/b/a Helping America Group; Breeze Financial Solutions, Inc. also d/b/a Credit Health Plan and Credit Maximizing Program; US Legal Club, LLC; Active Debt Solutions, LLC f/k/a Active Debt Solutions, Inc. also d/b/a Guardian Legal Center; Guardian LG, LLC also d/b/a Guardian Legal Group; American Credit Security, LLC f/k/a America Credit Shield, LLC; Paralegal Support Group LLC f/k/a Paralegal Support LLC; and Associated Administrative Services, LLC also d/b/a Jobfax, Viking Management Services, LLC, Cockburn & Associate LLC, Omni Management Partners LLC, Discount Marketing USA, S.A., JLMJP Pompano, LLC, Nantucket Cove of Illinois, LLC, Halfpay International, LLC, Halfpay NV, LLC, HP Properties Group, Inc., HP Media, Inc., White Light Media LLC, Blue42, LLC, National Arms, LLC, and 110 Glouchester St., LLC and their divisions, subsidiaries, affiliates, predecessors, successors, assigns, and any fictitious business entities or business names created or used by these entities, or any of them.

**INTRODUCTION**

The Receiver fulfilled and concluded all of his material duties as directed by this Court in its Receivership Orders [ECF Nos. 13, 21, 293], including the administration and liquidation of all assets of the Receivership (except for assets of nominal value that the Receiver proposes to abandon). The Receiver now petitions the Court for an order closing the Receivership and granting the following relief: (1) approval of a final distribution; (2) authority to abandon remaining non-distributable property; (3) authority to close financial accounts; (4) authority to destroy Receivership records; and (5) discharge of the Receiver and his professionals, including appropriate releases for them, as well as the entry of a narrow channeling injunction.

In this Motion, the Receiver first summarizes the history of the Receivership and his fulfillment of his duties and obligations. The Receiver then addresses the need for the relief he is requesting through this Motion. Finally, the Receiver attaches a proposed order setting forth the requested relief as **Exhibit 1** to the Motion. Importantly, the Receiver provided a draft of this Motion and order to counsel for Plaintiffs, the Federal Trade Commission and the Office of the Attorney General, State of Florida, Department of Legal Affairs who do not object to the relief sought herein.

**HISTORICAL BACKGROUND**

A.   **Creation of Receivership**

On May 8, 2017, the Federal Trade Commission ("FTC") and the Office of the Attorney General, State of Florida, Department of Legal Affairs ("State of Florida") (collectively, "Plaintiffs"), commenced this action by filing a complaint for permanent injunction and other relief (the "Complaint") and a motion for a temporary restraining order ("TRO") alleging that Jeremy Lee Marcus, Craig Davis Smith, Yisbet Segrea (collectively, the "Individual Defendants") and the

2

corporate Defendants violated Sections 5(a) of the FTC Act, 15 U.S.C. § 45(a), the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310 and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Chapter 501, Part II, Florida Statutes (2016), Fla. Stat. § 501.201 *et seq*. and the Telemarketing Act, 15 U.S.C. §§ 6101-6108.[2]

The Plaintiffs alleged that since approximately late 2013, Defendants engaged in a plan, program, or campaign to offer purported debt consolidation loans and debt relief services throughout the United States, including in the State of Florida, when in fact they did not make such loans or provide such services, and/or did so using false or deceptive and unfair acts. Consumers impacted by the Defendants' scheme carried significant debt and include the elderly and disabled. [ECF No. 1, Compl. at ¶ 35]. Specifically, the Plaintiffs alleged that the Defendants' false, deceptive or unfair practices (the "Sales Practices") included:

    i.    Defendants' website featured offers for low interest loans that would allow a consumer to combine all balances on their current alleged debt and make one easy payment with a low interest rate. [*Id.* at ¶¶ 38-41].

    ii.    On initial calls, Defendants led consumers to believe that their debts would be paid off and quoted attractive monthly payments that were significantly less than what consumers were paying their creditors. [*Id.* at ¶ 43].

    iii.    Defendants also told consumers they would become part of a non-profit service that worked to dismiss or settle the debts. Defendants told consumers their purported non-profit status enabled them to provide the loans at such low interest rates. In addition, Defendants told consumers that, as a non-profit, they had legal teams of attorneys who would work to get consumers' debts dismissed

---

[2] Subsequently, a First Amended Complaint named additional recipients of monies or property from these violations as "Relief Defendants" (the Individual Defendants, Receivership Defendants and Relief Defendants may be referred to herein collectively as the "Defendants"). The "Relief Defendants" were Teresa Duda; Jack Marcus; James Marcus; 1609 Belmont Place LLC; 16 S H Street Lake Worth, LLC; 17866 Lake Azure Way Boca, LLC; 114 Southwest 2nd Street DBF, LLC; 110 Glouchester St., LLC; 72 SE 6th Ave., LLC; Fast Pace 69 LLC; Strategic Acquisitions Two, LLC; Halfpay International d/b/a16 H.S. Street 12Plex LLC, 311 SE 3rd St., LLC, 412 Bayfront Drive, LLC, 110 Glouchester St., LLC, 72 SE 6th Ave., LLC, 114 SW 2nd Street JM, LLC, 8209 Desmond Drive, LLC, HLFP, LLC, Halfpay NV d/b/a Halfpay International, and Nantucket Cove of Illinois, LLC. [ECF No. 127].

|      | |
|------|---|
|      | or settled, and a credit corrections group who would improve consumers' credit. Defendants sometimes explained that any money they earned comes from the interest rates consumers would pay, or from any difference between what consumers paid them and the debts they were able to dismiss or settle. [*Id.* at ¶ 44]. |
| iv.  | While remaining on the line, Defendants' telemarketers emailed consumers an electronic link to 50-75 pages of documents designed to look much like a loan agreement, including a Truth in Lending Statement and loan repayment terms. Defendants showed consumers highlighted areas within the documents and asked them to simply initial and sign by clicking through those areas in order to finish processing the loan. Consumers were generally unaware that the documents contained language that contradicted representations made by the telemarketers. [*Id.* at ¶ 46]. |
| v.   | Believing Defendants would pay their debts or get them settled or dismissed, consumers agreed to have their bank accounts immediately debited for their first loan "repayment" or for a processing fee. Then, consumers continued "repaying" their loan each month through automatic bank debits ranging from $200 to $1,000 or more. [*Id.* at ¶ 47]. |
| vi.  | In Defendants' account takeover campaign, Defendants called consumers already enrolled with third-party debt relief providers and informed them that Defendants were taking over the servicing of their debt relief accounts. Many of these consumers had worked for years with their third-party debt relief providers and had saved money in established escrow accounts for use in negotiating with creditors. Many consumers' escrow balances were in the thousands. Defendants falsely promised they would continue to perform the same or similar debt relief services for these consumers. They instructed consumers to transfer all the money from their escrow accounts to Defendants. [*Id.* at ¶¶ 48-49]. |
| vii. | Once hooked through Defendants' misrepresentations, consumers often heard nothing from Defendants except, perhaps, in the form of a monthly telephone call to see how consumers were doing or through email payment reminders. With the purported loans, consumers sometimes received payment confirmations reinforcing the myth that consumers were repaying a debt consolidation loan. The confirmations typically specified that the "Amount Applied to Fees (if any)" is $0.00. [*Id.* at ¶ 50]. |
| viii.| At some point, consumers typically heard from their creditors, who often informed the consumers that their bills were unpaid and their accounts were going into default. When asked, consumers' creditors often informed the consumers that Defendants had not contacted the creditors to seek to pay, settle, or dismiss the consumers' debts. When consumers asked Defendants why their debts had not been paid as promised, Defendants continued to mislead |

4

    consumers by stringing them along with false explanations, including that Defendants needed time to validate consumers' debts or confirm payoff amounts. Defendants also insisted that consumers refrain from paying their creditors. [*Id.* at ¶¶ 51-52].

 ix. When consumers demanded proof of Defendants' efforts to pay, settle, or dismiss their debts, Defendants sometimes sent a form letter to consumers' creditors in the consumers' own names without first ascertaining the truth of the statements in the letter. The form letter suggested that the consumers would be filing bankruptcy or disputing the validity of the consumers' debts. In many instances, it was not until consumers demanded cancellation and a return of their money, threatened legal action, or complained to law enforcement or the Better Business Bureau that consumers finally discovered Defendants intent to keep all of consumers' money, including any loan "repayments" or funds transferred from consumers' escrow accounts, as "fees." [*Id.* at ¶¶ 53-54].

 x. Consumers who once thought their debts would be reduced and paid were essentially told that their debts had more than doubled, and not only did consumers still owe their original debts, they learned Defendants expected an equal amount in "fees." [*Id.* at ¶ 54].

 xi. Defendants typically refused to return consumers' money and, in many instances, threatened to report, and did report, the purported loan to credit bureaus if consumers did not continue to pay. [*Id.* at ¶ 55].

Plaintiffs asserted that Defendants' business activities violated the FTC Act, the Telemarketing Sales Act, and FDUTPA with respect to their (i) misrepresentations in marketing materials; (ii) misrepresentations in making sales; and (iii) wrongful post-sale conduct.

On May 8, 2017, this Court granted the Plaintiffs' application for a temporary restraining order with asset freeze against Defendants. [ECF No. 13]. The Court set a Preliminary Injunction hearing for May 17, 2017 at 1:00 p.m. [*Id.*]. This Court also appointed Jonathan E. Perlman, a shareholder in the Genovese, Joblove & Battista law firm, as temporary receiver, and directed him to assume full control of the Receivership Entities and their affiliates, subsidiaries, divisions, and sales operations.[3] [*Id.*].

---

[3] Effective January 1, 2023, the Receiver, Jonathan E. Perlman, as well as his counsel at Genovese Joblove & Battista, P.A. became part of the law firm Venable LLP. On January 26, 2023, the

Thereafter, on May 17, 2017, this Court entered a preliminary injunction, finding that the Plaintiffs were likely to prevail on the merits and that immediate and irreparable harm would likely result unless Defendants were restrained and a permanent receiver appointed. [ECF No. 21]. In connection with the preliminary injunction, this Court appointed Jonathan E. Perlman, as permanent receiver over the Receivership Defendants and "their affiliates, subsidiaries, divisions, or sales or customer service operations, wherever located, with the full power of an equity receiver." [*Id*.].

In connection with its appointment of Mr. Perlman as permanent receiver, this Court directed the Receiver to take control of the Receivership Entities and their affiliates, subsidiaries, divisions, and sale operations. The Order further directed the Receiver, among other things, to take custody, control and possession of all assets and documents of the Receivership Entities, take all steps necessary to secure each location from which the Receivership Entities operate their business, conserve, hold and manage all assets of the Receivership Entities, and perform all acts necessary or advisable to preserve the value of those assets, enter into contracts as advisable or necessary on behalf of the Receivership Entities, prevent the inequitable distribution of assets, protect the interests of consumers and creditors who have transacted business with the Receivership Entities, suspend business operations of the Receivership Entities if in the judgment of the Receiver such operations cannot be continued legally and profitably, issue subpoenas to obtain documents and records pertaining to the Receivership and conduct discovery on behalf of the Receivership Estate, open or maintain bank accounts as designated depositories for funds of the Receivership Entities, maintain accurate records of all receipts and expenditures made as

---

Receiver and his counsel filed their Notice of Firm Affiliation Change and Amended Designation of Email-Address. [ECF Nos. 554, 555].

Receiver, cooperate with reasonable requests for information, documents, materials, or assistance from any state or federal law enforcement agency, including Plaintiffs, and file reports with the Court.[4]

As set forth below, the Receiver and his professionals performed all of these tasks, and ultimately liquidated nearly all of the assets of the Receivership Entities. The remaining assets of the Receivership Estate have little value and the costs associated with liquidating them would likely exceed any monies recovered and the Receiver believes it is in the best interests of the estate to abandon these assets.

**B.      Receivership Assets**

As of October 7, 2024, the Receivership account balance was **$1,180,815.79**. Since his appointment, the Receiver with the assistance of his professionals collected **$30,668,417.10** for the benefit of the Receivership, including:

| | | |
|---|---|---|
| a. | Cash Collected from Receivership Entities: | $5,772,090.25 |
| b. | Litigation Recoveries from Third Parties: | $5,184,995.82 |
| c. | Cash from Entities Controlled by Defendants: | $3,154,089.09 |
| d. | Liquidation of Receivership Property (real and personal): | $16,064,380.52 |
| e. | Interest Paid on Receivership Accounts: | $492,861.42 |

**C.      Receivership Payments**

To date, the Receiver transferred **$20,550,000.00** to the Federal Trade Commission for

---

[4] In April 2018, the Individual Defendants each stipulated to entry of permanent injunctions and monetary judgments. [ECF No. 231 and 232]. The other Defendants either defaulted, consented to judgment on the pleadings, or have been dismissed. On September 7, 2018, the Court entered a Default Final Judgment and Order for Permanent Injunctive Relief and Monetary Judgment Against the Corporate Defendants [ECF No. 293].

consumer redress. Pursuant to this Court's Orders, the Receiver paid **$6,217,519.07** in professional fees and costs. Additionally, the Receiver paid Court-approved expenses totaling **$2,739,461.70**, consisting of ordinary business expenses of the Receivership Entities' business, as authorized by this Court. In connection with the approval of payment of these professional fees and expenses, the Receiver provided the FTC and State of Florida with the supporting bills and documentation.

<strong><u>RELIEF REQUESTED</u></strong>

A.     **<u>Final Distribution</u>**

During this case the Plaintiffs and the Receiver, working cooperatively pursuant to this Court's orders, distributed approximately **$20,550,000.00** to the FTC for distributions to consumers (the "Redress Payments"). The Redress Payments represent a meaningful recovery to consumers that were targeted by the Receivership Entities' bogus debt relief scheme that failed to deliver on the services it promised. All monies held by the Receiver result from (i) the liquidation of assets of the Receivership Entities, including litigation claims; or (ii) assets of the Receivership Entities surrendered to the Receiver in the course of enforcing this Court's orders.

As of October 7, 2024, the Receiver holds **$1,180,815.79** in the Receivership's accounts for payment of administrative expenses with the remaining funds to be transferred to the FTC for additional consumer redress.

Accordingly, the Receiver requests approval to make the following final payments:[5]

| | |
|---|---|
| Genovese Joblove & Battista, P.A. (including the Receiver's time and amounts due on Contingency Matters) | $85,971.50 (Hourly Fees)<br>$16,571.18 (Hourly Costs)<br>$430,164.23 (Contingency Fees)<br>$25,459.44 (Contingency Costs) |

---

[5] Concurrently with the filing of this Motion, the Receiver will file the final fee application for the fees and costs of the Receiver and his law firm, Genovese Joblove & Battista, P.A. and Venable LLP, and for authority to pay his accountants and tax professional (KapilaMukamal, LLP), as well as Carter & Carter, P.A., his lawyers in North Carolina.

| | |
|---|---|
| Venable LLP[6] (including the Receiver's time) | $60,212.50 (Hourly Fees) <br> $8,195.13 (Hourly Costs) |
| KapilaMukamal, LLP | $265,543.10 (Hourly Fees) <br> $4,108.02 (Hourly Costs) |
| Carter & Carter, PA | $4,785.35 (Hourly Fees) |
| Amount to be retained by the Receiver until the conclusion of all post-closing tax matters with the IRS and U.S. Treasury | All remaining funds until resolution of tax liability and then remainder will be transferred to FTC. |
| **TOTAL:** | **$901,010.45** |

As this Court is aware, an ESRP tax liability remains outstanding as to one of the receivership entities. On June 27, 2024, and June 28, 2024, the Receiver's tax professionals received correspondence from the IRS stating that the IRS "need[s] an additional 60 days" to address the Receiver's ESRP abatement request. Thus, the Receiver requests all remaining funds in the Receivership bank accounts (after payment of the professional fees above) to be maintained by the Receiver until such time as the IRS makes its final determination as to the outstanding ESRP tax liability. Any remaining funds after resolution of the ESRP will then be forwarded to Plaintiffs.

B. **Abandonment of Remaining Assets**

The Receivership Entities hold a few Receivership assets that are of minimal or no value. These assets include computer monitors and phone room switches. Because these assets have minimal or no value, the Receiver requests approval to abandon such assets. Moreover, to the extent these assets contain any information, which the Receiver believes they do not, the Receiver

---

[6] Effective January 1, 2023, the Receiver, Jonathan E. Perlman, as well as his counsel at Genovese Joblove & Battista, P.A. became part of the law firm Venable LLP. On January 26, 2023, the Receiver and his counsel filed their Notice of Firm Affiliation Change and Amended Designation of Email-Address. [ECF Nos. 554, 555]. The small amount of hourly fees owed to Venable LLP is for work the Receiver and his attorneys did to close out the Receivership and attend to tax issues since January 2023, and Venable LLP has agreed to the same discounted rate as GJB.

9

will ensure, prior to abandonment, that any and all information contained therein is removed.

The Receivership Entities also own approximately 160 website/domain names. The Receiver and his professionals placed these domain names for bid and ultimate sale on a Go Daddy affiliate website for the past two years, with no bids. Thus, the Receiver also requests approval to abandon the website/domain names in his possession.

Lastly, the Receivership Entities hold physical records recovered from the offices of the Receivership Entities, which the Receiver's law firm has been storing in a storage facility at a rate of approximately $142 per month, as well as at the Receiver's office free of charge to the Receivership Estate. The Receiver requests approval to shred and destroy the records.

### C. Discharge and Release of Receiver and Professionals

As explained above, the Receiver and his professionals faithfully executed their duties to this Court and to the Receivership Entities. As such, they are entitled to a discharge and release as provided in the attached order granting this Motion. Moreover, this Court should enter a channeling injunction requiring any person or entity wishing to file any request for relief against the Receiver, his professionals, etc., to file such request before this Court.

### D. Miscellaneous

The Receiver filed tax returns to the extent necessary as advised by his tax professionals. Nonetheless, despite his best efforts, the Receiver has been unable to obtain confirmation from the U.S. Treasury that it considers all taxes due to have been paid. For this reason, the Receiver requests authorization to continue to have limited authority to continue to act as Receiver merely to respond to any post-Receivership tax filings, including with regard to the outstanding ESRP tax liability, and to retain the remaining money in the Receivership bank accounts to cover future fees and expenses relating therein to the Receivership Estate as necessary, after conversation and

agreement regarding such fees and expenses with the Plaintiffs. Once the outstanding tax liability is fully resolved, the Receiver shall transfer any remaining funds to the Plaintiffs.

**MEMORANDUM IN SUPPORT**

**A.   The Court Should Grant the Additional Relief Necessary to Close the Receivership**

The relief requested in this Motion will promote the orderly and prompt resolution of the Receivership in an expeditious manner. As explained below, the Court should close the Receivership and grant the proposed order attached hereto as **Exhibit 1**.

The Court's power over an equity receivership and to determine appropriate procedures for administering a receivership is "extremely broad." *S.E.C. v. Hardy*, 803 F.2d 1034, 1037 (9thCir. 1986); *S.E.C. v. Basic Energy*, 273 F.3d 657, 668 (6th Cir. 2001); *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992). The Court's wide discretion derives from the inherent powers of an equity court to fashion relief. *Elliott*, 953 F.2d at 1566; *S.E.C. v. Safety Finance Service*, 674 F.2d 368, 372 (5th Cir. 1982). The primary purpose of an equity receivership is to promote the orderly and efficient administration of the estate for the benefit of the creditors. *Hardy*, 803 F.2d at 1038.

As noted above, the Receiver liquidated or otherwise disposed of all assets with material value. He thus seeks to abandon all remaining assets because they have no material value to the Receivership Estate. In fact, the costs associated with liquidating these *de minimus* assets likely exceeds the any monies which could be captured. *See S.E.C. v. Kirkland*, 2008 WL 4144424, at *3 (M.D. Fla. Sept. 5, 2008) (noting "[t]he Receiver has subsequently been granted leave to abandon several assets"); *S.E.C. v. Hyatt*, 2016 WL 2766285, at *4 (N.D. Ill. May 13, 2016) ("Hyatt's other two homes … were both in foreclosure and would have no equity after the mortgages were paid; as a result, the [r]eceiver obtained court authorization to abandon these properties."); *S.E.C. v. Ryan*, 2013 WL 12141502, at *1 (N.D.N.Y. 2013) (permitting receiver to

abandon remaining assets because the real estate was of little value).

Moreover, in the exercise of their authority, courts routinely find that a receiver and his professionals are entitled to broad releases upon the conclusion of their duties in a receivership. *See Federal Trade Commission v. World Patent Marketing, Inc., et al*, No. 1:17cv20848 (S.D. Fla. Jan. 1, 2021) (Gayles, J.), ECF No. 177 (granting receiver broad release); *Federal Trade Commission v. GDP Network LLC, et al.*, No. 6:20-cv-1192 (M.D. Fla. Oct. 18, 2022) (Berger, J.), ECF No. 120 (same); *see also Wells Fargo Bank, N.A. v. West Jackson Student Housing, LLC*, 2012 WL 5947659, at *4 (S.D. Miss. Nov. 28, 2012) (the release of "unknown or hidden claims" is typical language included in a receiver's release). Here, the Receiver and his professionals have faithfully executed their duties to this Court and to the Receivership Entities. As such, they are entitled to a discharge and release as provided in the attached order granting this Motion.

Lastly, because the entire Receivership was under the control of this Court and the Receiver was acting as an arm of this Court in fulfilling his duties, no future claims should be asserted against the Receivership Estate or the Receiver without the claimant first seeking leave of this Court to assert such a claim. *See, e.g.*, *Barton v. Barbour*, 104 U.S. 126, 129 (1881); *Lawrence v. Goldberg*, 573 F.3d 1265 (11th Cir. 2009). Accordingly, this Court should enter a channeling injunction requiring any person or entity wishing to file any request for relief against the Receiver, his professionals, etc., to file such request before this Court. Moreover, the Receiver shall respond to any filed requests for relief only if asked to do so by this Court.

## **CONCLUSION**

Given the need to bring finality to this matter, the Receiver believes the relief requested in this motion is logical, fair, and reasonable. Accordingly, the Receiver requests this Court grant the Motion and provide the Receiver the relief requested herein.

**WHEREFORE**, the Receiver, Jonathan E. Perlman, Esq., respectfully requests the following:

1. The Receiver's Final Status Report and Unopposed Motion to (I) Close Out Receivership Proceeding, (II) Abandon Estate Property, (III) Approve Final Distribution, and (IV) Discharge the Receiver and his Professionals is GRANTED.

2. The Receiver and his professionals are DISCHARGED of any and all of their duties and obligations of any kind in this case and are relieved of all liability with respect to the Receivership Estate, with the exception of any and all duties to file post-receivership tax issues.

3. The Receivership is closed without further order of this Court.

4. The Receiver is authorized to distribute the cash assets that the Receiver is holding for the Receivership Entities in the manner set forth in the Motion, and in this Court's separate Order on the Receiver's Final Motion for Award of Professional Fees and Reimbursement of Expenses filed concurrently.

5. The Court find that the Receiver holds certain assets that are either of minimal or no value that would cost more to liquidate than the value they could bring to the Receivership Entities' Estate on a cost-benefit analysis. The Receiver is authorized to abandon the remaining assets of the Receivership Entities' Estate as requested.

6. The Receiver is authorized to file any amended or supplemental tax returns for the Receivership Entities, if deemed necessary, and to dissolve the Receivership Entities pursuant to applicable law.

7. The Receiver is authorized to close all Receivership Entities' accounts, including accounts maintained at banks, brokerages and financial institutions.

8. The Receiver may shred and destroy all Receivership records.

9. The Court shall enter the following release: the Receiver and his respective agents, employees, subsidiaries, successors, assigns, heirs, attorneys, and representatives (the "Receiver Parties") are hereby irrevocably and unconditionally fully, finally and forever released, waived, acquitted and discharged from any claim or potential claim by any person or entity of any and all accounts, actions, agreements, bonds, bills, causes of action, claims, contracts, controversies, costs, counterclaims, covenants, damages, demands, debts, disputes, executions, judgments, lawsuits, liabilities, obligations, promises, reckonings, remedies, specialties, suits, sums of money, trespasses, variances, of whatever kind, nature, character or description, whether in law, at equity or statutory, including, without limitation, claims for monies, damages, costs, expenses, losses and attorneys', accountants' and experts' fees and expenses, whether liquidated or unliquidated, fixed or contingent, asserted or unasserted, matured or unmatured, known or unknown, anticipated or unanticipated, suspected or unsuspected, which any person may have or may hereafter have or claim to have, now or in the future, or which might have been alleged against the Receiver Parties by, or related directly or indirectly in any way to, their work as, or for, or on behalf of the Receiver.

10. The Court shall enter an injunction whereby any person or entity wishing to file any claims against the Receiver or his professionals relating to the discharge of their duties to this Court or the Receivership Entities, must do so only before this Court. The Receiver shall respond to any such requests for relief only if requested to do so by this Court.

## S.D. Fla. L.R. 7.1(A)(3) CERTIFICATE OF CONFERENCE

Undersigned counsel hereby certifies that counsels for the Receiver, Gregory Garno and Elizabeth McIntosh, as well as the Receiver, conferred with counsel for the Plaintiffs, the FTC and the State of Florida, and provided a draft of this Motion. The Receiver is authorized to represent that the Plaintiffs do not object to the relief requested herein.

Respectfully submitted this 8th day of October, 2024.

Respectfully submitted,

  s/ Jonathan E. Perlman
Jonathan E. Perlman, Esq. (Florida Bar No. 773328)
jperlman@venable.com
*Receiver for the Receivership Entities*

-and-

Respectfully submitted,

VENABLE LLP
*Attorney for Jonathan E. Perlman, Receiver*
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
Telephone: (305) 349-2300

By:   /s/ Elizabeth G. McIntosh
          Gregory M. Garno, Esq.
          Florida Bar No. 87505
          ggarno@venable.com
          Elizabeth G. McIntosh, Esq.
          Florida Bar No. 1011555
          emcintosh@venable.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of October, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document has been served this day on all counsel of record and entities, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

  /s/ Elizabeth G. McIntosh
      Attorney