UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:17-60907-CIV-MORENO/SELTZER

FEDERAL TRADE COMMISSION, *et al.*,

    Plaintiffs,

v.

JEREMY LEE MARCUS, *et al.*,

    Defendants.
_____/

## RECEIVER'S FINAL MOTION FOR AWARD OF PROFESSIONAL FEES AND REIMBURSEMENT OF EXPENSES

Jonathan E. Perlman, Receiver for the Receivership Entities, files his Final Motion for Award of Professional Fees and Reimbursement of Expenses (the "Final Fee Application") seeking approval to pay professional fees and costs incurred from September 30, 2020 through October 8, 2024, as well as all remaining contingency amounts due (the "Final Application Period").

### I.    INTRODUCTION

In this case, the efforts of the Receiver and his professionals have facilitated the Plaintiffs' recovery and disbursement of over $20 million to consumers (the "Redress Payments"). The Redress Payments represent a meaningful recovery to consumers that were targeted by Receivership Entities' fraudulent debt relief scheme that failed to deliver on the services promised. The Receiver has completed his administration of the Receivership Estate and will contemporaneously file a motion requesting the Court discharge the Receiver and approve the termination of this Receivership. By this Motion, the Receiver seeks approval to compensate his professionals in this case for the last two and a half years.

To date, the Receiver and his professionals have collected **$30,668,417.10** for the benefit of the Receivership. The Redress Payment and the administrative expenses of this Receivership Estate have been funded by recoveries facilitated or obtained by the Receiver, including:

<ul>
<li>a. Cash Collected from Receivership Entities: $5,772,090.25</li>
<li>b. Litigation Recoveries from Third Parties: $5,184,995.82</li>
<li>c. Cash from Entities Controlled by Defendants: $3,154,089.09</li>
<li>d. Liquidation of Receivership Property (real and personal): $16,064,380.52</li>
<li>e. Interest Paid on Receivership Accounts: $492,861.42</li>
</ul>

Moreover, the Receivership bank accounts currently have a balance of approximately **$1,180,815.79.**

*First*, as discussed more fully below, the Receiver seeks approval to pay his counsel, Genovese Joblove & Battista, P.A. ("GJB") and Venable LLP ("Venable") (collectively, GJB and Venable shall be referred to as "Venable")[1] **$146,184.00** in fees and **$24,766.31** in reimbursement of costs and expenses for hourly services rendered during the Final Application Period; his forensic accountants, KapilaMukamal LLP ("KM") **$265,543.10** in fees and **$4,108.02** in costs for the Final Application Period; and his North Carolina counsel, Carter & Carter, P.A. ("C&C") **$4,785.35** in fees for the Final Application Period.

*Second*, during the administration of the case, the Receiver determined that to maximize recovery for the Receivership Estate, it was necessary to pursue a number of litigation claims. The

---

[1] Effective January 1, 2023, the Receiver, Jonathan E. Perlman, as well as his counsel at Genovese Joblove & Battista, P.A. became part of the law firm Venable LLP. On January 25, 2023, the Receiver and his counsel filed their Notice of Firm Affiliation Change and Amended Designation of Email-Address. [ECF Nos. 554, 555]. The small amount of hourly fees owed to Venable LLP is for work the Receiver and his attorneys did to close out the Receivership and attend to tax issues since January 2023, and Venable LLP has agreed to the same discounted rate as GJB.

Receiver shared his plan with the Plaintiffs, and they agreed that it was in the best interest of the Receivership Estate for the Receiver to pursue certain litigation and recoveries on a contingency fee basis ("Contingency Matters") rather than at an hourly rate, in order to eliminate the upfront expense of pursuing those matters, as well as the additional risk of loss should some or all of those ultimately prove unsuccessful. The Receiver and Venable agreed to the Contingency Matters as a service to the Receivership Estate and agreed to a discounted contingency fee rate of 28%. Additionally, the Receiver agreed that his time for work on the Contingency Matters would also be paid from the contingency with Venable where he is a partner. On July 22, 2019, this Court entered an order approving the contingency fee arrangement. [ECF No. 396]. The Receiver seeks authority to pay Venable **$430,164.23** in fees and **$25,459.44** in costs for the Contingency Matters. Accordingly, Venable seeks payment of **$576,348.23** in fees for both hourly and Contingency Matters and **$50,225.75** in costs for both hourly and Contingency Matters, for a total payment of **$626,573.98** to Venable.

Prior to filing the Final Application, the Receiver provided Plaintiffs with the supporting documents for the fees and costs sought herein. The Receiver is authorized to represent that the Plaintiffs have no objection to the relief requested herein. The Receiver will provide the supporting documentation to the Court upon request.

## II.   APPLICATION

### A.   Background

On May 8, 2017, the Federal Trade Commission ("FTC") and the Office of the Attorney General, State of Florida, Department of Legal Affairs ("State of Florida") (collectively, the "Plaintiffs"), commenced this action by filing a complaint for permanent injunction and other relief (the "Complaint"), and a motion for a temporary restraining order and other equitable relief against

Jeremy Lee Marcus, Craig Davis Smith, Yisbet Segrea (collectively, the "Individual Defendants"), the named corporate defendants and the named relief defendants, (the Individual Defendants, named corporate defendants and relief defendants may be referred to herein collectively as the "Defendants"). Plaintiffs alleged that the Individual and corporate defendants violated Sections 5(a) of the FTC Act, 15 U.S.C. § 45(a), the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310 and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Chapter 501, Part II, Florida Statutes (2016), Fla. Stat. § 501.201 *et seq*. and the Telemarketing Act, 15 U.S.C. §§ 6101-6108. [ECF No. 1].

On May 9, 2017, this Court granted the Plaintiffs' application for a temporary restraining order with asset freeze against Defendants and entered an Order freezing assets belonging to any of the Individual Defendants and corporate defendants (the "TRO"). [ECF No. 13]. In connection with the TRO, the Court appointed Jonathan E. Perlman as temporary receiver over the Receivership Defendants identified in the Complaint. [*Id.*].

On May 17, 2017, the Court entered the Preliminary Injunction (the "PI") [ECF No. 21] which appointed Jonathan E. Perlman as permanent receiver, and directed him to assume full control of the Receivership Entities and their affiliates, subsidiaries, divisions, and sales operations. The PI further directed the Receiver to take exclusive custody, control, and possession of all assets and documents of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated. Under the PI, the Receiver shall have "full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all assets and documents of the Receivership Defendants and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of the Receivership Defendants." The PI further directed the Receiver to investigate potential actions to preserve or recover the assets

of the Receivership Defendants, including against third parties, and institute such actions where the Receiver deems prudent.

The Receiver's appointment commenced on May 9, 2017. The Receiver, an equity partner with Venable, retained Venable as his lead counsel. The Receiver also retained KM to provide accounting, forensic accounting, and tax-related services in this matter. Under the express terms of the PI, the Receiver and all personnel hired by the Receiver, as herein authorized, including counsel to the Receiver and accountants, are entitled to "reasonable compensation for the performance of duties undertaken pursuant to the Orders and for the cost of actual out-of-pocket expenses incurred from the assets now held by or in the possession or control of, or which may be received by, the Defendants." [ECF No. 21 at Section F].

Further, pursuant to the PI, the Receiver shall file with the Court, and serve on the parties, periodic motions for the payment of such compensation. To date, the Receiver submitted nine applications for payment of professional fees and reimbursement of costs. *See* [ECF Nos. 135, 275, 282, 315, 385, 418, 450, 502, 530]. Additionally, the Receiver also periodically submitted fee applications based on certain Contingency Matters. *See* [ECF Nos. 520, 527]. All of the applications submitted to the Court for fees have been approved. *See* [ECF Nos. 211, 291, 294, 322, 399, 436, 482, 508, 525, 528, and 532]. The Receiver has not submitted an application for payment of professional hourly fees and reimbursement of costs since November 25, 2020, [ECF Nos. 529, 532], and has not submitted an application for payment of fees and costs based on Contingency Matters since October 16, 2020 [ECF Nos. 527, 528].

### B. The Professionals

To preserve assets for consumers, the Receiver and his professionals billed at a reduced agreed upon rate. All Venable timekeepers billed at 20-40% below their regular hourly billing rate.

In addition, the Receiver billed at $425 per hour, representing a 38% reduction from his normal hourly rate. The Receiver and Venable provided a further discount to the Receivership Estate in this Final Fee Application by not requesting reimbursement for the fully compensable work performed by members of the Receiver's team employed by Venable who provided critical functions in IT, internal accounting, bookkeeping, and consumer relations services during the Final Application Period. The Receiver and Venable also agreed to bear any costs they have incurred for faxes and Westlaw research to further conserve the Receivership's assets. Further, the Receiver and Venable agreed to charge a reduced price per page for photocopies and printing. Additionally, as explained above, the Receiver determined that to maximize recovery for the Receivership Estate, it was necessary to pursue a number of litigation claims on a contingency basis, i.e., the Contingency Matters. The Receiver and Venable agreed to the Contingency Matters as a service to the Receivership Estate and agreed to a discounted contingency fee rate of 28%, which this Court approved. *See* [ECF No. 396].

The Receiver's forensic accounting and tax professionals at KM, per an agreement negotiated by the Receiver, billed at 15% below their regular hourly billing rate. And C&C, the law firm hired by the Receiver to handle a civil action in North Carolina on behalf of the Receiver, also agreed to bill at a reduced hourly rate.

On March 25, 2021 this Court entered an Order granting in part and denying in part the Receiver's Motion for Extension of Time to Complete Administration of Receivership (the "March 2021 Order"). [ECF No. 535]. In the March 2021 Order, this Court stated that the "Court will only approve fees *after* the completion of the receivership" and "given the almost four years of litigation, the hourly fee rate requested will be reduced 50 per cent." [*Id*.]. Notably, the professionals in this case have not been paid in more than two (2) years, since September 30, 2020.

6

Additionally, the professionals have already taken on the work at substantially reduced hourly rates. In fact, the discounted hourly rate of the professionals was calculated in 2017, and the rates have not risen since despite the increase in market rates for professionals each year since. For example, certain partners at Venable are already discounted by at least 38% below their normal hourly rate, and associates are discounted by at least 20% below their normal hourly rate. Accordingly, the Receiver asks this Court to permit the professionals to be paid at the discounted hourly rates agreed to by the parties and approved by this Court in 2017.

C. **Fees and Costs to Be Approved**[2]

The Receiver and Venable hereby submit for approval and payment of Venable's fees for **$146,184.00** for 456.9 hours of service during the Final Application Period, and expenses in the amount of **$24,766.31** for a total payment of **$170,950.31** for hourly fees and costs. Besides the aforementioned discounted hourly rates, Venable has voluntarily agreed to forego in excess of $20,000 in fees. The Receiver and Venable also submit for approval and payment of Venable's fees in the amount of **$430,164.23** for 5,156.3 hours of work on Contingency Matters and costs in the amount of **$25,459.44** during the Final Fee Application. The Receiver and Venable agreed to the Contingency Matters as a service to the Receivership Estate and agreed to a discounted contingency fee rate of 28%. *See* [ECF No. 396]. Accordingly, Venable seeks payment of **$576,348.23** in fees for both hourly and Contingency Matters and **$50,225.75** in costs for both hourly and Contingency Matters, for a total payment of **$626,573.98** to Venable.

The Receiver also hereby submits for approval payment to KM for **$265,543.10** in fees and **$4,108.02** in expenses during the Final Application Period. This request for payment reflects a

---

[2] The Receiver and his retained professionals have not received payment for services rendered to the Receivership Estate since September 30, 2020. *See* [ECF No. 532].

15% reduction on KM's normal hourly rates.

Lastly, the Receiver also hereby submits for approval payment to C&C for **$4,785.35** in fees for the Final Application Period. This request for payment reflects a 15% reduction on C&C's normal hourly rates.

### III. WORK PERFORMED BY THE RECEIVER'S PROFESSIONALS

#### A. The Receiver and Venable

During the Final Application Period, the Receiver finalized and completed his liquidation of a real-estate development in Beecher, Illinois. He also attended to various issues relating to the wind up of the Receivership Estate including attending to various tax issues, liquidating all remaining Receivership Property that had value, reconciling bank accounts, reviewing subpoenas and addressing issues regarding same. The Receiver and his professionals also worked with the FTC in order to effectuate the Redress Payments. KM attended to various financial and tax related matters, and C&C helped the Receiver litigate *Perlman v. Andrew A. Russo et al.*, Case No. 20-CVS-797 (Sup. Ct. Div., New Hanover County, NC) to settlement.

Additionally, the Receiver and his professionals also litigated and resolved the remaining Contingency Matters: *Perlman v. Bitterroot Tool & Machine, Inc.*, Case No. 20-61291-CIV-CANNON; *Perlman v. PNC Bank, N.A.*, Case No. 19-61390-CIV-SMITH (S.D. Fla.); *Perlman v. American Express Centurion Bank, et. al.*, Case No. 19-61386-CIV-SMITH (S.D. Fla.); *Perlman v. Vairog US, LLC*, Case No. 20-61216-CIV-SMITH (S.D. Fla); *Perlman v. Howard M. Babcock*, Case No. 21-21691-CIV-BLOOM (S.D. Fla); and *Emigrant Residential, LLC v. Alana La Torra-Borland, et al.*, Case No. 50-2019-CA-008754, (17th Cir. Ct., West Palm Beach, FL). As a result of these efforts in the Contingency Matters, the Receiver recovered in excess of $5 million for the

Receivership Estate. A breakdown of the recoveries in each case is set forth below[3]:

| Contingency Matter Name | Receipts from Resolutions of Contingency Matters | Fees Due to Venable (28% of receipts) | Costs Due to Venable |
|---|---|---|---|
| *Perlman v. Bitterroot Tool & Machine, Inc.* | $125,000.00 | $35,000.00 | $4,698.00 |
| *Perlman v. PNC Bank, N.A.* | $25,000.00 | $7,000.00 | $3,883.35 |
| *Perlman v. Vairog US, LLC* | $250,000 | $70,000.00 | $5,169.07 |
| *Perlman v. American Express Centurion Bank, et. al.* | $450,000.00 | $126,000.00 | $10,894.76 |
| *Emigrant Residential, LLC v. Alana La Torra-Borland, et al.* | $670,782.64 | $187,819.14 | $140.95 |
| *Perlman v. Howard M. Babcock* | $15,518.18 | $4,345.09 | $673.31 |
| **TOTAL:** | **$1,536,300.82** | **$430,164.23** | **$25,459.44** |

B. **KapilaMukamal**

As part of their ongoing forensic investigation, KM continued to analyze the flow of funds using available bank records, accounting records, and merchant account records to prepare bank reconstructions for use in the Contingency Matters. Additionally, KM analyzed the tax returns, QuickBooks accounting records, and financial statements for the Receivership Entities in connection with its forensic accounting investigation. KM's Soneet Kapila prepared two expert reports in the *Perlman v. American Express Centurion Bank, et. al.* matter and sat for an expert deposition in connection with same. Further, KM assisted the Receiver in organizing its claims against PNC Bank. During the Final Application Period, KM continued to provide litigation

---

[3] Venable voluntarily reduced certain expenses for further benefit to consumers and the Receivership Estate.

support, tax advice, tax preparation, and construction consulting to the Receiver. Lastly, KM finalized and filed tax filings for the Receivership Entities, for the years 2020, 2021, and 2022.

    C.    **Carter & Carter, P.A.**

C&C assisted in the *Perlman v. Russo* litigation pending in North Carolina, including negotiation and drafting of a settlement agreement, and researching various issues asserted by the defendant's attorney. C&C was instrumental in bringing this litigation to an end and negotiating the settlement and payment of same.

    IV.    **MEMORANDUM OF LAW**

This Court has broad power to appoint a receiver and to award the receiver fees for his services and for expenses incurred by the receiver in the performance of his duties. *See Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984) ("[T]he receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to reasonable compensation for his efforts."); *see also Securities & Exchange Commission v. Elliott*, 953 F. Supp. 1560 (11th Cir. 1992) (receiver is entitled to compensation for faithful performance of his duties).

In determining attorneys' fees, a court must: (1) determine the nature and extent of the services rendered; (2) determine the value of those services; and (3) consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d. 714 (5th Cir. 1974), *abrogated on other grounds, Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939, 103 L.Ed.2d 67 (1989). In *Johnson*, the court set forth twelve factors a court should consider in determining reasonableness of an attorneys' fees award in a particular case. They are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the

case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or by the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*, 488 F.2d at 717-719. The Eleventh Circuit adopted these *Johnson* factors in *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988).

    A.    **Application of the *Johnson* Factors**

        1.    **The Time and Labor Required.**

The Receiver and his team have focused on preserving and liquidating the assets of the Receivership Estate. Based upon the scope and complexity of the issues associated with the Receiver discharging his obligations under the PI, this appointment has been extremely time intensive.

While the Receiver and his professionals always work with a cost/benefit equation in mind as to each task, in the general context of litigation and, more specifically, in the administration of receiverships, the Receiver must sometimes pursue work that does not immediately present a quick benefit. However, the Receiver and his professionals were determined to pursue only those tasks that were essential to completing the tasks assigned by the Court and to maximize consumer recovery.

Moreover, the Contingency Matters involved multiple lawsuits with complicated and contested competing claims and arguments with skilled counsel. Counsel and the Receiver agreed to bear the risk of a potentially undesirable result during a time of extreme uncertainty by agreeing to the contingency arrangement. The Receiver himself also assisted in the litigation, contributing

his specialized knowledge to the case as part of the services rendered for which the contingent fee will be paid, rather than continued billing to the Receivership Estate separately on an hourly basis.

### 2. The Novelty and Difficulty of the Questions Presented.

By its very nature, a receivership is unique and complex. This case is no different. The Receiver in this case was regularly faced with novel and difficult legal questions and challenges in the administration of the Receivership Estate. The Receivership Estate was vast and complicated and required the Receiver and his professionals to devote significant time and effort to addressing and resolving questions and challenges. Additionally, the law involved in these Contingency Matters consisted of complicated and novel questions regarding fraudulent transfers, creditors' rights and receivership law.

### 3. The Skill Required to Perform the Legal Services Properly.

The Receiver possesses the requisite skills to perform the services of receiver in this matter. The Receiver is an attorney with 30 years of experience. The Receiver regularly represents parties in complex litigation and has both brought and defended numerous actions under the Federal Trade Commission Act. The Receiver is AV rated by the Martindale Hubbell Attorney Directory. He currently serves as the court appointed Receiver over various entities that perpetrated an investor fraud scheme in *SEC v. TCA Fund Management Group Corp. et al.*, Case No. 20-21964-CIV-ALTONAGA (S.D. Fla.).

Lastly, both Venable and KM possess the requisite skills to have represented the Receiver in this case. Both firms have significant experience in representing fiduciaries in complex cases. C&C also possesses the requisite skills to have represented the Receiver. C&C has significant experience in commercial litigation, creditors rights, and foreclosure matters in North Carolina where the Receivership Estate had a mortgage interest.

### 4. The Preclusion of Other Employment by the Attorney due to Acceptance of the Case.

The time spent on Contingency Matters precluded lawyers and other professionals from spending time on other matters, which would have been billed on an hourly basis paid month-by-month. Certain of these Contingency Matters posed serious challenges with a substantial likelihood of no recoveries so the market of law firms willing to handle it on a contingent fee basis was small. These cases required constant partner level attention, and resolutions could not have been accomplished without very experienced and knowledgeable counsel.

### 5. The Customary Fee for Similar Work in the Community.

The hourly rates charged by the attorneys and accountants providing work to the Receiver, as well as the Receiver's hourly rate, are below the customary rates of the attorneys who worked on this case and below those charged by attorneys or accountants with comparable skills in the jurisdiction where they practice for similar work. The hourly rates charged were discounted by Venable, KM and C&C for the benefit of the consumers.

With regard to the Contingency Matters, a 28% contingent fee for difficult and complex with a risk of no recovery is well below the customary rate charged by attorneys providing such work to receivers; a more typical contingency fee is higher, typically 40%. Moreover, the hourly rates of Venable (to which the contingent fee is compared) are well within, if not below, the customary hourly rates of the attorneys working on such matters.

### 6. Whether the Fee is Fixed or Contingent.

The Receiver and his professionals' compensation in this matter is comprised of fixed discounted hourly rates subject to the final approval of this Court, as well as contingency fee arrangements. The Court should consider that the professionals assumed the risk of non-payment

and delay in payment. At present, the Receiver expects that there will be sufficient funds available in this Receivership to make such payment.

**7.     Time Limitations Imposed by the Client or by the Circumstances.**

The nature of this case has required careful time management by the professionals involved because of the need to resolve issues efficiently and economically. Based upon the size and breadth of the Receivership Estate, this case required an extensive investment of professional time. Also, the nature of Contingency Matters and the negotiation of same required constant effort by Venable. As set forth above, the Receiver and counsel agreed to forgo further hourly fees and pursue the highly complex matters on contingency during a time of extreme uncertainty and when *any* recovery was doubtful.

**8.     The Amount Involved and Results Obtained.**

The Receiver and his professionals ultimately recovered $30,668,417.10 for the Receivership Estate. This amount is substantial and substantially increased the Receivership Estate's assets, and the amounts of the Redress Payments.

**9.     The Experience, Reputation and Ability of the Professionals.**

The principal attorneys on this case are experienced professionals and litigators in the Southern District of Florida. The Receiver has 35 years of experience in civil litigation and is well-respected in the legal community. He has served as a Federal Equity Receiver in cases before Judge Daniel T. Hurley (*SEC v. Creative Capital Consortium, LLC et al.*, Case No. 08-81565-Civ-Hurley/Hopkins (S.D. Fla.)); Judge Cecilia Altonaga (*FTC v. Hispanic Global Way Corp., et al.,* Case No. 14-22018-Civ-Altonaga/O'Sullivan (S.D. Fla.), *FTC v. Pointbreak Media, LLC, et al.*, Case No. 18-61017-Civ-Altonaga/Seltzer (S.D. Fla.), and *SEC v. TCA Fund Management Group Corp. et al.*, Case No. 20-21964-CIV-ALTONAGA (S.D. Fla.); Judge Darrin P. Gayles (*FTC v.*

*World Patent Marketing, et al.*, Case No. 17-cv-20848-Gayles-Otazo-Reyes (S.D. Fla.)); Judge Jose E. Martinez (*FTC v. VGC Corp. of America, et al.,* Case No. 11-21757-Martinez-Goodman (S.D. Fla.)). To date, these Honorable Judges have approved all of the Receiver's Fee Applications.

KM has experienced accountants well known in this community for representing and providing accounting, forensic accounting, and tax-related services to fiduciaries and others for over 25 years. The principals of KM often serve as fiduciaries in cases similar to this case.

C&C possesses the requisite skills to represent the Receiver. C&C has over 39 years of experience with creditors' rights and foreclosure matters under North Carolina law.

**10.    The Undesirability of the Case.**

This case is not undesirable; the Receiver and the professionals under his authority are privileged to be involved.

**11.    Awards in Similar Cases.**

The Receiver believes the fees and costs submitted to the Court for consideration in this Application are similar to those awarded in other receivership cases in the Southern District of Florida.

**WHEREFORE**, the Receiver, Jonathan E. Perlman, Esq., respectfully requests this Court to enter an order (i) granting this Motion for Award of Fees and Reimbursement of Expenses approving all fees and expenses; (ii) authorizing payment to Venable of fees and expenses incurred during the Final Application Period in the amount of **$626,573.98** (**$576,348.23** in fees and **$50,225.75** in expenses)[4]; (iii) authorizing payment to KM of fees incurred during the Final

---

[4] The specific breakdown of the fees and costs payable to Venable LLP and the fees and costs payable to GJB are set forth on the chart on pages 8-9 of the Receiver's Final Status Report and Motion to (I) Close Out Receivership Proceeding, (II) Abandon Estate Property, (III) Approve Final Distribution, and (IV) Discharge the Receiver and His Professionals [ECF No. 548] and in

Application Period in the amount of **$265,543.10** and expenses in the amount of **$4,108.02**; and (iv) authorizing payment to C&C of fees incurred during the Final Application Period in the amount of **$4,785.35**. A proposed form of order is attached hereto.

### S.D. Fla. L.R. 7.1(A)(3) CERTIFICATE OF CONFERENCE

Undersigned counsel hereby certifies that counsel for the Receiver, Gregory Garno and Elizabeth McIntosh, as well as the Receiver, conferred with counsel for the Plaintiffs, the FTC and the State of Florida and provided a draft of this Motion. The Receiver is authorized to represent that the Plaintiffs have no objection to the relief requested herein.

Respectfully submitted this 8th day of October, 2024.

Respectfully submitted,

  s/ Jonathan E. Perlman
Jonathan E. Perlman, Esq. (Florida Bar No. 773328)
jperlman@venable.com
*Receiver for the Receivership Entities*

-and-

VENABLE LLP
*Attorney for Jonathan E. Perlman, Receiver*
801 Brickell Avenue
Suite 1500
Miami, Florida 33131
Telephone: (305) 349-2300

By:   /s/ Elizabeth G. McIntosh
      Gregory M. Garno, Esq.
      Florida Bar No. 87505
      ggarno@venable.com
      Elizabeth G. McIntosh, Esq.
      Florida Bar No. 1011555
      emcintosh@venable.com

---

the proposed Order Granting Receiver's Final Motion for Award of Professional Fees and Reimbursement of Expenses filed simultaneously herewith.

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 8th day of October, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document has been served this day on all counsel of record and entities, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                  /s/ Elizabeth G. McIntosh
                                                            Attorney