UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-60907-CIV-MORENO

FEDERAL TRADE COMMISSION, *et al.*,

    Plaintiffs,
v.

JEREMY LEE MARCUS, *et al.*,

    Defendants.
_____/

## DECLARATION OF RECEIVER JONATHAN E. PERLMAN IN SUPPORT OF FINAL MOTION FOR AWARD OF PROFESSIONAL FEES AND REIMBURSEMENT OF EXPENSES

I, Jonathan E. Perlman, Esq., in my capacity as court-appointed Receiver in the case of *FTC, et al., v. Marcus, et al.,* Case No. 017-CV-60907-MORENO, and declare as follows:

1. On May 8, 2017, the Federal Trade Commission ("FTC") and the Office of the Attorney General, State of Florida, Department of Legal Affairs ("State of Florida") (collectively, the "Plaintiffs"), commenced this action by filing a complaint for permanent injunction and other relief (the "Complaint"), and a motion for a temporary restraining order and other equitable relief against Jeremy Lee Marcus, Craig Davis Smith, Yisbet Segrea (collectively, the "Individual Defendants"), the named corporate defendants and the named relief defendants, (the Individual Defendants, named corporate defendants and relief defendants may be referred to herein collectively as the "Defendants").

2. Plaintiffs alleged that the Individual Defendants and corporate defendants violated Sections 5(a) of the FTC Act, 15 U.S.C. § 45(a), the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310 and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Chapter

501, Part II, Florida Statutes (2016), Fla. Stat. § 501.201 *et seq.* and the Telemarketing Act, 15 U.S.C. §§ 6101-6108. [ECF No. 1].

3. On May 9, 2017, this Court granted the Plaintiffs' application for a temporary restraining order with asset freeze against Defendants and entered an Order freezing assets belonging to any of the Individual Defendants and corporate defendants (the "TRO"). [ECF No. 13]. In connection with the TRO, I was appointed as temporary receiver over the Receivership Defendants identified in the Complaint. [*Id.*].

4. Thereafter, on May 17, 2017, the Court entered the Preliminary Injunction (the "PI") [ECF No. 21], which appointed me as permanent receiver. [ECF No. 21]. I was directed to assume full control of the Receivership Entities and their affiliates, subsidiaries, divisions, and sales operations. [*Id.*].

5. At the time of my appointment, I was a shareholder with the law firm Genovese Joblove & Battista, P.A. ("GJB"). As a shareholder with GJB, I retained GJB as lead counsel.[1]

6. At the time of my appointment, I also retained KapilaMukamal LLP ("KM") to provide accounting, forensic accounting, and tax-related services in this matter.

7. I later retained Carter & Carter, P.A. ("C&C") to handle a civil action in North Carolina on my behalf.

8. Under the express terms of the PI, all personnel I hired, including my counsel and accountants, as well as myself as Receiver, are entitled to "reasonable compensation for the performance of duties undertaken pursuant to the Orders and for the cost of actual out-of-pocket

---

[1] Effective January 1, 2023, GJB and I became part of the law firm Venable LLP ("Venable"). On January 25, 2023, I filed a Notice of Firm Affiliation Change and Amended Designation of Email-Address. [ECF Nos. 554, 555].

2

expenses incurred from the assets now held by or in the possession or control of, or which may be received by, the Defendants." [ECF No. 21 at Section F].

9. Notably, in order to preserve assets for consumers, my professionals and I billed at a reduced hourly rate, negotiated with the Plaintiffs, which was subsequently approved by this Court.

10. Throughout the course of this receivership, all GJB and Venable timekeepers billed at 20-40% below their regular hourly billing rate. In addition, I billed at $425 per hour, representing a 38% reduction from my normal hourly rate. GJB and Venable also provided further discounts to the Receivership Estate, including by not requesting reimbursement for the fully compensable work performed by members of my team employed by GJB and Venable who provided critical functions in IT, internal accounting, bookkeeping, and consumer relations services during the Final Application Period, as well as by agreeing to bear any costs incurred for faxes and Westlaw research to further conserve the Receivership's assets. Further, GJB and Venable agreed to charge a reduced price per page for photocopies and printing.

11. KM, per a negotiated agreement, billed at 15% below the regular hourly billing rate. And C&C also agreed to bill at a reduced hourly rate.

12. Moreover, during the administration of the case, I determined that to maximize recovery for the Receivership Estate, it was necessary to pursue a number of litigation claims. I shared this plan with the Plaintiffs, and they agreed that it was in the best interest of the Receivership Estate to pursue certain litigation and recoveries on a contingency fee basis ("Contingency Matters") rather than at an hourly rate to eliminate the upfront expense of pursuing those matters, as well as the additional risk of loss should some or all of those ultimately prove unsuccessful.

13. I, with my counsel, agreed to take on the Contingency Matters as a service to the Receivership Estate and agreed to a discounted contingency fee rate of 28%. I also agreed that my time for work on the Contingency Matters would be paid from the contingency amounts payable to GJB and Venable.

14. On July 22, 2019, this Court entered an order approving the contingency fee arrangement. [ECF No. 396]. And as a result of efforts in the Contingency Matters, in excess of $5 million was recovered for the Receivership Estate.

15. Pursuant to the PI, I was ordered to file with the Court, and serve on the parties, periodic motions for the payment of compensation. To date, I submitted nine applications for payment of professional fees and reimbursement of costs. *See* [ECF Nos. 135, 275, 282, 315, 385, 418, 450, 502, 530]. Additionally, I periodically submitted fee applications based on certain Contingency Matters. *See* [ECF Nos. 520, 527].

16. Notably, all of the applications were approved without any objections. *See* [ECF Nos. 211, 291, 294, 322, 399, 436, 482, 508, 525, 528, and 532].

17. Moreover, I have not applied for payment of professional hourly fees and reimbursement of costs since November 25, 2020, [ECF Nos. 529, 532], nor have I submitted an application for payment of fees and costs based on Contingency Matters since October 16, 2020 [ECF Nos. 527, 528].[2]

---

[2] Since the filing of my last application for payment of fees and costs for cases litigated on a contingency fee basis, the following Contingency Matters were litigated and resolved, and payment for same was included in the Final Fee Application: *Perlman v. Bitterroot Tool & Machine, Inc.*, Case No. 20-61291-CIV-CANNON; *Perlman v. PNC Bank, N.A.*, Case No. 19-61390-CIV-SMITH (S.D. Fla.); *Perlman v. American Express Centurion Bank, et. al.*, Case No. 19-61386-CIV-SMITH (S.D. Fla.); *Perlman v. Vairog US, LLC*, Case No. 20-61216-CIV-SMITH (S.D. Fla); *Perlman v. Howard M. Babcock*, Case No. 21-21691-CIV-BLOOM (S.D. Fla); and *Emigrant Residential, LLC v. Alana La Torra-Borland, et al.*, Case No. 50-2019-CA-008754, (17th Cir. Ct., West Palm Beach, FL).

18. On October 8, 2024, simultaneous with the filing of the Final Status Report and Motion to (I) Close Out Receivership Proceeding, (II) Abandon Estate Property, (III) Approve Final Distribution, and (IV) Discharge the Receiver and his Professionals [ECF No. 584], I filed a Final Motion for Award of Professional Fees and Reimbursement of Expenses (the "Final Fee Application") [ECF No. 585].

19. Thereafter, this Court entered an order requiring supporting documentation for Final Motion for Award of Professional Fees and Reimbursement of Expenses (the "Supporting Documentation Order"). *See* [ECF No. 588].

20. Specifically, the Supporting Documentation Order ordered me to file supporting documentation for the fees, costs, and expenses, including the billing records for each attorney or professional and any invoices or other documentation demonstrating costs and expenses. [*Id.*].

21. The Supporting Document Order also ordered me to provide any invoices or other documentation demonstrating the costs incurred for the Contingency Matters. [*Id.*].

22. In compliance with the Supporting Documentation Order, the following documents are attached hereto:

   a. **Exhibit A:** Invoices for the hourly amounts owed to GJB, which include documentation for both fees and expenses.

   b. **Exhibit B:** Invoices for the hourly amounts owed to Venable LLP, which include documentation for both fees and expenses.[3]

   c. **Exhibit C:** Invoices for the amounts owed to KM, which include documentation for both fees and expenses.

   d. **Exhibit D:** Invoices for the amounts owed to C&C, which include documentation for both fees and expenses.

---

[3] The small amount of hourly fees owed to Venable LLP is for work the Receiver and his attorneys did to close out the Receivership and attend to tax issues since January 2023, and Venable LLP has agreed to the same discounted rate as GJB.

5

e. **Exhibit E:** Invoices documenting the expenses for the Contingency Matters.

23. Lastly, the Supporting Document Order ordered me to file supporting documentation demonstrating the receipts and resolutions of the Contingency Matters. *See* [ECF No. 588].

24. I hereby certify the following is a breakdown of the recoveries in the remaining Contingency Matters, which are included in the Final Fee Application:

| Contingency Matter Name | Receipts from Resolutions of Contingency Matters | Fees Due to Venable (28% of receipts) | Costs Due to Venable |
|---|---|---|---|
| *Perlman v. Bitterroot Tool & Machine, Inc.* | $125,000.00 | $35,000.00 | $4,698.00 |
| *Perlman v. PNC Bank, N.A.* | $25,000.00 | $7,000.00 | $3,883.35 |
| *Perlman v. Vairog US, LLC* | $250,000 | $70,000.00 | $5,169.07 |
| *Perlman v. American Express Centurion Bank, et. al.* | $450,000.00 | $126,000.00 | $10,894.76 |
| *Emigrant Residential, LLC v. Alana La Torra-Borland, et al.* | $670,782.64 | $187,819.14 | $140.95 |
| *Perlman v. Howard M. Babcock* | $15,518.18 | $4,345.09 | $673.31 |
| **TOTAL:** | **$1,536,300.82** | **$430,164.23** | **$25,459.44** |

**[*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*]**

## DECLARATION

I, Jonathan E. Perlman, do hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11th day of December, 2024.

_____
Jonathan E. Perlman, Esq.
Receiver